REVISED

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————————

## No. 96-40091

———————————————

## ROGELIO RANGEL HERNANDEZ,

**Petitioner-Appellant,**

**versus**

## GARY JOHNSON, DIRECTOR,
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
## INSTITUTIONAL DIVISION,

**Respondent-Appellee.**

———————————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————————————————————————

March 12, 1997

Before GARWOOD, JONES, and EMILIO M. GARZA, Circuit Judges

EDITH H. JONES, Circuit Judge:

Appellant Rogelio Hernandez was convicted of capital murder and sentenced to death for murdering Officer Jose Herrera during an attempted escape from the Webb County Jail in 1986. After appellant's conviction was affirmed on direct review and a last-minute petition for state habeas corpus was overruled, appellant sought a stay of execution and writ of habeas corpus in federal court. After an evidentiary hearing on appellant's most significant claims, the district court denied relief on

each of appellant's forty-six alleged errors. The district court granted a certificate of probable cause[1] and appellant now seeks reversal of the district court decision based on his counsel's alleged conflict of interest and ineffective assistance. We hold that Hernandez's attorney did not labor under an actual conflict of interest by having served as district attorney when Hernandez pled guilty to prior felonies, and there was no "adverse effect" on Hernandez's defense from the potential conflict. We affirm the district court's decision to deny relief on this and on the other ineffective assistance claims.

## I. BACKGROUND

Hernandez and several co-conspirators attempted to escape from the Webb County jail in Laredo, Texas on February 3, 1986. In planning for the escape, appellant arranged for three handguns to be smuggled into the jail. Upon receipt of .25 caliber weapons, however, Hernandez informed his outside contact that he needed bigger guns, and subsequently two .38 caliber pistols were smuggled inside.

On the day of the murder, the lawyer for one of the co-conspirators visited the jail, purportedly to talk with Hernandez. Officer Herrera went to remove Hernandez from his cell to meet with the lawyer. The plan was to force Officer Herrera to release appellant and his co-conspirators. When Officer Herrera did not cooperate, Hernandez shot him three times, firing the fatal shot into his temple. The state court described what happened next:

> Jose de Jesus Benavides and Merced Martinez, two other detention officers who came to investigate the sound of gunfire, were each shot several times by the appellant, who was then armed with a large caliber revolver in each hand. Ruben Reyes, another detention officer, was also shot. A narrow stairwell in the jail prevented law enforcement officers from reaching the second floor and allowed appellant to control that floor for most of the night. After threatening

---

[1]Since the district court issued the certificate of probable cause in January 1996, before the passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's jurisdiction attached under the then-existing 28 U.S.C. § 2253. A certificate of appealability under the AEDPA is issued under the same standards as a certificate of probable cause. *Drinkard v. Johnson*, ___ F.3d ___, 1996 WL 571122 at *2-3 (5th Cir. 1996); AEDPA, § 102 (to be codified at 28 U.S.C. § 2253(c)(2)).

to shoot other inmates on the second floor, appellant finally surrendered and was taken into custody.

*Hernandez v. State*, 819 S.W.2d 806, 809 (Tex. Cr. App. 1991), *cert. denied*, *Hernandez v. Texas*, ___ U.S. ___, 112 S.Ct. 2944 (1992).

Hernandez was first convicted and sentenced to death for this crime in 1987, but his conviction was overturned because of the improper exclusion of a prospective juror. *Hernandez v. State*, 757 S.W.2d 744 (Tex. Cr. App. 1988).

Appellant was retried, convicted, and again sentenced to death in 1989. The evidence overwhelmingly pointed to his guilt. Hernandez's outside contact testified that appellant requested the weapons for the escape. The fatal shot struck Officer Herrera in the temple and was fired by a large caliber weapon. Hernandez had gunpowder residue on his hands when he was arrested and was seen shortly after the shots were fired with the only two large caliber weapons found in the jail. The jury also heard evidence that appellant shot the other officers and occupied the second floor for several hours before finally surrendering. Both during the standoff and after his arrest, appellant admitted to the detention officers that he had shot Officer Herrera.

At the penalty phase of trial, appellant's lengthy criminal record, including two prior murder convictions, was revealed. Local law enforcement officers testified to Hernandez's poor reputation as a peaceful and law-abiding citizen. A member of a prison gang also testified that Hernandez was a leader in the Texas Syndicate and performed criminal activities in prison on behalf of the gang. The state also introduced appellant's letters to his family, written shortly before the murder, indicating that he would "die trying to be free again."

His second conviction was affirmed by the Texas Court of Criminal Appeals. *Hernandez*, 819 S.W.2d at 820. After a petition for certiori was denied by the U.S. Supreme Court, appellant was allegedly unable to obtain counsel for state habeas proceedings and did not seek state post-conviction relief except for an unsuccessful motion for a stay to obtain counsel. He was scheduled to be executed on August 21, 1992.

The day before that fatal deadline, Hernandez filed a motion for stay of execution and a petition for writ of habeas corpus in federal district court. The district court granted the stay of execution and conducted an evidentiary hearing. The district court denied appellant's petition for writ of habeas corpus with an extensive and careful memorandum and order issued August 3, 1995 and granted a certificate of probable cause on January 30, 1996, continuing the stay pending this appeal.

## II. DISCUSSION

### A.    Applicable standard of review

The President signed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) on April 24, 1996. Pub. L. No. 104-132, 110 Stat. 1214 (1996). This circuit has held that the AEDPA applies to appeals pending as of the effective date of the act. *Drinkard v. Johnson*, ___ F.3d ___, 1996 WL 571122, *11 (5th Cir. 1996). In *Drinkard*, the panel determined that applying § 2254(d)(1) as amended by the AEDPA did not raise retroactivity problems since the amendment is a "change in procedural rules" involving "federal standards of review of state court decisions." *Id.* at *12. A habeas petitioner normally cannot demonstrate reliance on the "former federal standards of habeas review in making strategic, tactical, or other decisions during the state court litigation." *Id.* The amended § 2254(d)[2] applies to the review of claims adjudicated on the merits in state court. However, Hernandez's ineffectiveness claims were not adjudicated on the merits in state court.[3]

---

[2]AEDPA, § 104(3) (to be codified at 28 U.S.C. § 2254(d)) reads:
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[3]The conflict of interest question was adjudicated in state court pretrial proceedings, because the state moved to disqualify

4

Section § 2254(e)(2), as amended by the AEDPA, identifies limited circumstances under which a federal court may hold an evidentiary hearing on a claim for which a state prisoner failed to develop the factual basis in state court. The amended section provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
>     (A) the claim relies on --
>         (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>         (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>     (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

AEDPA, § 104(4) (to be codified at 28 U.S.C. § 2254(e)(2)). This provision, like the amendments to § 2254(d), embodies a procedural change in federal habeas review of state decisions and raises no retroactivity concerns. *See Drinkard*, 1996 WL 571122 at *12; *Lindh v. Murphy*, ___ F.3d ___, 1996 WL 517290 (7th Cir. 1996); *Hunter v. Vasquez*, 1996 WL 612484, *6 (N.D. Cal. 1996). It could not apply in this case, of course, because the federal evidentiary hearing was held well before AEDPA was passed.

Application of § 2254 as amended is thus problematic for claims that were adjudicated in federal district court but not on the merits in state court before the passage of AEDPA. In this unusual situation, which will become even rarer as AEDPA's terms shift the focus of hearings to state

---

Borchers as Hernandez's lead trial counsel, the court heard arguments and took evidence, the court held there was no conflict, and the court then elicited a waiver from Hernandez and his express wish to be represented by Borchers. The district court *sua sponte* stated that Hernandez appeared to have waived his claim of a conflict.

courts where it belongs,[4] we will review the record including both the federal and, where applicable, state court hearings. *See* n.3 *supra.* As Hernandez has been unable to prevail by means of the more liberal criteria, it is clear that, under AEDPA's more rigorous § 2254(d) standard, he would lose.

### B. Appellant's claims

#### 1. Conflict of interest

Appellant alleges that his attorney's prior service as the elected district attorney when Hernandez was tried created a conflict of interest that adversely affected his attorney's performance. For the second trial in 1989, the court appointed Charles Borchers and Teresa Hunter to represent appellant. Borchers served as Webb County district attorney from 1973 to 1980, during which time appellant was convicted of two felonies in Webb County: aggravated assault with a deadly weapon in 1976 and murder in 1978. Although Borchers was not the trial counsel for the state in appellant's cases, Borchers signed a motion requesting psychiatric evaluation of appellant in connection with the 1978 charge, signed a motion to dismiss a related indictment after Hernandez pled guilty, and probably approved Hernandez's plea bargain.[5] With respect to the 1976 felony, Borchers signed two applications for subpeonas and moved to dismiss related charges after appellant pled guilty.

In a pretrial hearing in the state court, the state objected to Borchers's service as appellant's attorney, making arguments similar to those now advanced by Hernandez. The state

---

[4]AEDPA now provides that the state will not be deemed to have waived or be estopped from raising the exhaustion of remedies requirement unless the state expressly consents to waive it. § 2254(b)(3), as amended by AEDPA. But, even if the state consents to waive exhaustion, as it did here, § 2254(e)(2) circumscribes the grounds on which a federal court may hold a habeas hearing on a claim whose factual basis was not developed in state court. Combined, the provisions clearly place the burden on a petitioner to raise and litigate as fully as possible his potential federal claims in state court.

[5]For purposes of this appeal, we assume Borchers approved appellant's plea bargain, even though the only "evidence" supporting this conclusion is pure speculation offered by Hernandez at the evidentiary hearing before Judge Kazen.

argued that Borchers would be in the position of attacking convictions obtained during his tenure, threatened to call Borchers as a witness to support the prior convictions, and even pointed to a possible reversal on appeal as a reason for disqualifying Borchers. The state also pointed out that Borchers signed the 1978 commitment request, that Borchers's current law partner, Steven Whitworth, was the prosecutor who handled the 1978 murder prosecution, and that Borchers may have approved appellant's 1978 plea bargain. Borchers's co-defense counsel, Ms. Hunter, responded that Borchers's participation in the prior cases was peripheral, noting that he made no appearances and signed no stipulations in the cases, and she urged the court to take judicial notice of the files of the prior cases. The trial court overruled the state's motion to disqualify.[6]

---

[6] After ruling that Mr. Borchers was not disqualified, the following exchange occurred:

> The Court: Well, let me, before I go on to something else. Mr. Hernandez, do you understand --
> The Defendant: Yes, Sir. I do.
> The Court: -- what just went on with regards to the State's motion to disqualify your attorney?
> The Defendant: Right, Sir.
> The Court: And you are aware that Mr. Borchers was in fact the District Attorney at one time?
> The Defendant: Yes, Sir.
> The Court: That was up until 1978?
> Mr. Borchers: No, Sir. It was from 1973 through 1980, eight years.
> The Court: And knowing what you know now about Mr. Borchers and your previous dealings with him, do you have any reservations about whether he could represent you fairly and adequately?
> The Defendant: No, Sir. I would like to keep him as my attorney in this case.
> The Court: Along with Ms. Hunter?
> The Defendant: Yes, Sir.

In addition, in rejecting another claim made by appellant, the federal district court made an explicit finding that Mr. Hernandez is an "intelligent and articulate man who, after having spent much of his adult life in the criminal justice system, appears intimately familiar with the rights afforded criminal defendants." D. Ct. Op. at 52, n. 27. The district court also noted that "after being told of this circumstance [Borchers's prior service as district attorney], Petitioner agreed to let Borchers represent him." Id. at 42-43. We do not reach the waiver question because appellant's claim has no merit, but had the state timely raised a waiver defense, it is almost certain that appellant waived his right to complain of any deficiencies resulting from Borchers's prior service as district attorney.

7

Hernandez now contends that Borchers's service as district attorney[7] during the period of appellant's prior convictions created an actual conflict of interest that adversely affected Borchers's performance under *Cuyler v. Sullivan* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718 (1980). If Hernandez were correct, then under *Cuyler*, prejudice to the defendant is generally presumed. *Id.* at 348, 100 S.Ct. at 1718. This circuit has limited *Cuyler* to actual conflicts resulting from a lawyer's representation of multiple criminal defendants. *Beets v. Scott*, 65 F.3d 1258, ____ (5th Cir. 1995) (en banc), *cert. denied*, ___ U.S. ___, 116 S.Ct. 1547 (1996) (citing *Nix v. Whiteside*, 475 U.S. 156, 165-66, 106 S.Ct. 988, 993 (1986)). We shall assume *arguendo* that the putative conflict presented by Borchers's prior service as district attorney when Hernandez was convicted of felonies in Webb County presents a *Cuyler* problem, although Borchers did not represent multiple *defendants* but two parties with arguably disparate interests. In addition to actual conflict, petitioner must show adverse effect, meaning that "some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest." *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996).

Appellant argues that since the 1976 and 1978 convictions were pled in the indictment and introduced by the state at the penalty phase, Borchers faced a choice between challenging convictions obtained during his tenure as district attorney or not providing appellant with zealous representation. A Texas rule of professional responsibility bars district and county attorneys from being "of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers, be of counsel adverse to the State in any case in which they have been of counsel

---

[7]Appellant also alleges as another "conflict" that Borchers served as court-appointed counsel for appellant during the prosecution of appellant's 1968 theft conviction. Although this could have created a conflict under some hypothetical scenario, Hernandez makes no effort to demonstrate how this prior representation creates an actual conflict in this case or how he could have been adversely affected.

for the State." Tex. Code Crim. Proc. art. 2.08. Since Borchers withdrew a motion[8] that would have challenged the prior convictions, there was necessarily, appellant alleges, an actual conflict with adverse effect.

Like the state trial court and federal habeas court, we are not convinced that petitioner has shown an actual conflict of interest. A mere possibility of conflict does not raise a presumption of prejudice, and "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. Borchers's involvement in the prior prosecutions of appellant was not personal and substantial enough to give rise automatically to an actual conflict regardless of the circumstances. *See* ABA Model Rules of Professional Conduct, Rule 1.11(a) (counsel must have been "personally and substantially" involved in prior litigation involving defendant). Borchers's service as district attorney ended nine years before appellant's trial; he personally searched the records of the prior felonies before representing Hernandez to determine whether he was involved in those prosecutions and concluded there was no hindrance. Under these circumstances, where Borchers was only tenuously and nominally connected to the prior cases against Hernandez, it can hardly be said that he "actively" represented conflicting interests. *See Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719.

In addition to finding that no conflict arose, the federal district court found that appellant did not provide "any evidence that this alleged conflict affected Borchers' performance." We agree, and thus Hernandez cannot meet the adverse effect prong of *Cuyler*.

Hernandez contends that collaterally attacking petitioner's prior convictions was a plausible defense strategy that was not pursued because of the alleged conflict. No evidence from the state or federal habeas hearings supports any part of this theory. Hernandez merely speculates

---

[8] The motion to strike the enhancement allegations asserted that the indictments which formed the basis of the 1976 and 1978 convictions failed to state all elements of the charged offense. The motion also alleged without elaboration that counsel rendered ineffective assistance during the trial of the 1978 offense.

9

that counsel's withdrawal of a motion attacking the prior convictions at the same hearing where the State urged its motion to disqualify him from the case temporally substantiates the conflict's effect.

The inference Hernandez would draw from this timing is contrary to testimony at the federal habeas hearing. In response to questioning from the court, Mr. Borchers testified: "If I knew of a ground that we could've attacked that conviction on, we would've. We certainly wouldn't have just close [sic] the lid." He also stated that "had there been a pretty obvious basis" on which to attack the convictions, he would have done so. Hernandez has never adduced any evidence at the evidentiary hearing or in his post-hearing submissions that there was a viable basis upon which the prior convictions could be attacked. Significantly, the same objections raised by Borchers's withdrawn motion were overruled at appellant's first trial.

Finally, the state trial court, after hearing the prosecutor argue as Hernandez does now that Borchers would be forced to attack convictions obtained during his tenure as district attorney, denied the motion to disqualify and concluded that "Defense Counsel [ Borchers] is not disqualified under Article 2.08." This decision was stated while Borchers's motion to strike the enhancement allegations was still pending. In essence, the state court ruling left Borchers free to attack appellant's prior convictions. Such a ruling would ordinarily insulate Borchers from a later challenge based on alleged conflicts of interest because of his prior status as district attorney.

The district court, and earlier, the state trial court, were each in a far better position to evaluate the credibility of witnesses, weigh the evidence, and determine if there was an actual conflict or any adverse effect from the alleged conflict of interest. *See Burger v. Kemp*, 483 U.S. 766, 785, 107 S.Ct. 3114, 3121 (1987) ("The district judge, who presumably is familiar with the legal talents and character of the lawyers who practice at the local bar and who saw and heard the witness testify, is in a far better position than we are to evaluate a charge [that there was an actual conflict] ..."). The district court found Borchers's testimony credible and Hernandez's proof lacking. We perceive no basis to disturb the district court finding that there was no evidence of adverse effect on

10

Borchers's performance because of his prior service as elected district attorney. No viable options were foreclosed.[9]

**Denial of discovery.** Appellant alternatively argues that the district court abused its discretion by denying discovery and an evidentiary hearing on this claim. Appellant argues that the district court's failure to rule on appellant's discovery requests was a blanket denial of discovery in the face of factual allegations that present a prima facie claim for relief. *See East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1996).

We disagree. Appellant has made no showing of what types of evidence he hopes to obtain from the district attorney's files which would entitle him to relief. Appellant is not entitled to a fishing expedition. *East*, 55 F.3d at 1005; *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994). Further, the district court gave appellant ample opportunity to develop his claim: the court held an evidentiary hearing at which Borchers's alleged conflict was fair game and was the subject of questioning by appellant's habeas counsel and Judge Kazen himself. At the time of the evidentiary

---

[9] The cases cited by appellant from other circuits are distinguishable. In *United States v. Ziegenhagen*, the Seventh Circuit remanded for an evidentiary hearing after an appeal of a federal firearm conviction where the defense attorney was involved in prosecuting one of the defendant's prior convictions used for enhancement purposes. 890 F.2d 937, 940-41 (7th Cir. 1989). However, the defense attorney in *Ziegenhagen* actually appeared for the State at the prior sentencing proceeding and failed to inform the defendant or the court of the potential conflict prior to the gun possession trial or sentencing. *Id.* Ultimately, as appellant admits, the district court on remand in *Ziegenhagen* found that the defense counsel played a peripheral role in the prior prosecution and did not actively represent conflicting interests by defending Ziegenhagen against the gun possession charge. *United States v. Ziegenhagen*, No. 89-256; 1990 U.S. App. LEXIS 9835 (7th Cir. 1990).

*Maiden v. Brunnell*, 35 F.3d 477 (9th Cir. 1994), is similarly unavailing for appellant's position. In *Maiden*, the Ninth Circuit rejected a habeas petition alleging conflict of interest where the defense attorney had been the actual prosecutor who successfully convicted the defendant only three years earlier. *Id.* at 479-481. After rejecting the *Ziegenhagen* court's categorical condemnation of prosecutors switching sides, the *Maiden* court determined that there was no conflict because the two cases were not related. *Id.* at 480-81. The *Maiden* court stated that a reviewing court should pay particular attention to those cases where a lawyer would be required to undermine or criticize his prior work. *Id.* at 481. However, the court was not presented with such a case, and that statement was dicta. *Id.* In any event, the *Maiden* dicta does not compel a finding of actual conflict in this case, since the state trial court found that Mr. Borchers was not barred from representing appellant and pursuing any attacks on prior convictions that might be necessary.

hearing, appellant had available the transcript of the state court hearing which allegedly provides the evidence of adverse effect. Borchers was questioned about the decision not to challenge appellant's prior convictions, and he said he did not believe there were plausible grounds to attack the convictions. Hernandez was unable to impeach this testimony.

### 2. Ineffective assistance of counsel

The only alleged defect in Borchers's performance that appellant attributes to his prior service as district attorney is the failure to challenge the enhancement convictions. Appellant's remaining claims of ineffective assistance at both the penalty and guilty/innocence phases of his state trial are measured under *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052 (1984).

To prevail on an ineffectiveness claim, appellant must show both deficient performance by counsel, and prejudice to the defense as a result of the performance. *Id*. at 687, 104 S. Ct. at 2064. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id*. at 688, 104 S. Ct. at 2064. Our review of counsel's performance is highly deferential, with a strong presumption that performance was reasonable. *Id*. at 689, 104 S. Ct. at 2065. Deficient performance is prejudicial only upon a showing that but for trial counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined. *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994).

### a. Punishment phase.

Hernandez argues that his lawyers were ineffective at the punishment phase of his trial because of inadequate preparation and investigation. Borchers spent less than two hours visiting Hernandez in jail before his trial and interviewed only two of thirty-one state witnesses (both of whom testified at the guilt/innocence phase). Hunter attempted but failed to locate appellant's jailmates at the time of the breakout, Hunter had a baby less than two months before the start of voir dire, and Hunter allegedly only visited Hernandez in jail one time for 37 minutes, over eight months before the trial started.

12

Hernandez also complains that his counsel did not pursue available sources of mitigating evidence. Borchers and Hunter had appellant fill out a "questionnaire" from the Texas Resource Center that was intended to be a checklist for attorneys to use while interviewing a capital defendant. According to Hernandez, his answers to the questionnaire identified several sources of possible mitigating evidence that were not pursued. Appellant also faults his counsel for not using the $1500 approved by the court to hire an investigator.

Appellant contends that his counsel should have discovered and presented a wide variety of mitigating evidence, including: a history of drug and alcohol abuse and resulting hallucinations; prior treatment with psychotropic medication; past psychometric tests that put him in a category of "borderline psychotics" who "have periods of confusion and disorientation;" names and addresses of family members; school records revealing that appellant liked school but quit because of teasing about his time at reform school; and records indicating appellant had suicidal thoughts. In addition, Hernandez contends that he cannot remember the 1978 murder, and that if Borchers and Hunter had contacted his sister, she would have testified that while his co-conspirators were covered in blood when they came home the night of the 1978 murder, Hernandez did not have blood on him.

Borchers also assertedly prejudiced Hernandez's defense by asking three jurors in voir dire about the effect of mitigating evidence. Appellant argues that this questioning created an expectation in the jury's minds that mitigating evidence would be presented and exacerbated the impact of counsel's failure to put on mitigating evidence.

After considering appellant's claims and conducting a hearing on counsel's effectiveness at the penalty phase, the district court doubted that Hernandez had shown objectively unreasonable assistance, and we harbor similar reservations.[10] We also agree with the district court's

[10] The district court concluded that appellant had overstated the deficiencies of his counsel's performance. Borchers read several background materials on defending a capital case. Borchers interviewed his client before trial and relied primarily on Hernandez as the source of mitigating evidence. Borchers also reviewed the transcript from appellant's first trial, interviewed

13

conclusion that even if appellant has demonstrated unreasonable performance, he failed to show prejudice.

The district court found that had appellant's counsel investigated more effectively, the most that could have been discovered was:

> (1) that Petitioner loved his family and did good deeds for his siblings;
>
> (2) that he had a serious drug and alcohol problem dating back to his youth;

---

appellant's prior lawyers, and reviewed documents from the Webb County Jail, Courthouse and district attorney's office regarding appellant's record. Hunter interviewed appellant concerning his family history on several occasions, reviewed the transcripts of appellant's first trial and the trial of a co-defendant, interviewed appellant's prior lawyers and the prosecutor's investigator, and attempted to locate other inmates who had been imprisoned in appellant's cell block, although she was unsuccessful because they had all either died or been deported to Mexico.

The district court found that appellant's counsel discussed the crime with appellant and attempted to discover his version of the events. Counsel interviewed appellant to discover mitigating evidence and provided appellant with a questionnaire to elicit mitigating evidence. Counsel testified that appellant was adamant that his family not be contacted. Appellant argues that his prohibition only extended to his mother and son testifying at trial, but the district court found that counsel reasonably believed that appellant's entire family was off limits. Hunter explained to appellant the importance of developing mitigating evidence and that the questionnaire would be used for that purpose. The court also found that appellant understood the importance of mitigating evidence. Appellant admitted learning of the Supreme Court's decision in *Penry v. Lynaugh* and asking Borchers if there would be any mitigating evidence presented.

Nonetheless, appellant was not cooperative in providing information. The questionnaire contained numerous responses that described his family life in idyllic terms. Appellant wrote on the questionnaire: "I have always had my parents' love and support. I was always provided with what I needed or was necessary"; "Everyone was treated the same and no one was never abused in any way or form." The district court also noted that the affidavits from appellant's family submitted after the evidentiary hearing do not support the allegation of childhood abuse and that the affidavit of appellant's sister does not mention the 1978 murder.

In further support of the trial court's conclusion, we note that the first trial record reflected that in the 1978 competency evaluation conducted at Rusk, Hernandez was found competent to stand trial, sane at the time of the offense, and to be a "manipulative psychopathic personality." First Trial Record, Defendant's Exhibit 1 (Sept. 29, 1978 Report of Dr. James Hunter). Hernandez had also been diagnosed as "a sociopath or ... an antisocial personality." Id. This suggests that counsel had good reason not to delve further into these matters.

14

> (3)     that as a teen, he was interned at the Gatesville School for Boys, which was later found by a federal district court to have inflicted cruel and unusual punishment on its inmates;
>
> (4)     that he suffered from occasional hallucinations;
>
> (5)     that he attempted suicide on three occasions while in jail in 1978 and that three siblings had previously attempted suicide;
>
> (6)     that he was diagnosed by T.D.C. mental health personnel as a borderline "psychotic" and was administered psychotropic medication;
>
> (7)     that he did not plan for anyone to get hurt during the attempted jailbreak; that he tried to get Officer Herrera help after he was shot; and that he was so remorseful over Herrera's death that he asked a priest to convey his regrets to Herrera's mother.

D. Ct. Op. at 59-60. Appellant does not challenge these findings by the district court.

Weighed against the evidence heard at the guilt and punishment phases of the trial, Hernandez has not met his burden of demonstrating a reasonable probability that if the above evidence had been discovered and introduced by his trial counsel, appellant would not have been sentenced to death. Among Hernandez's prior felony convictions were two for grisly murders: the 1985 murder of U.S. Customs Agent Ernesto Vera and the 1978 murder of a prostitute named Antonia Venegas. O.J. Hale, the investigator for the prosecution and a member of the Webb County Sheriff's Department, testified that he had arrested appellant for Venegas's murder and was a part of the S.W.A.T. team that arrested appellant for Vera's murder. Hale testified that Venegas's naked body was found with her throat slit and with multiple stab wounds. Dr. Francisco Gonzalez testified that Venegas had been stabbed forty-four times and authenticated a crime scene photo of her body. Dr. Gonzalez also testified that Ernesto Vera had been shot twice in the back and once around his waistline.

Eliseo Martinez, who was imprisoned with appellant, testified that Hernandez was "chairman" of the Laredo and Ellis One units of the Texas Syndicate, a drug gang that operates inside and outside Texas prisons. Membership in the gang is limited to "cold-blooded killers," and Martinez

15

testified that appellant could order killings and drug deals. Martinez also testified that appellant dealt drugs for the Syndicate in the early 1980s.

Additionally, there were the facts surrounding the attempted jailbreak. A prison guard responding to the sound of the shots that killed Officer Herrera found Hernandez holding a revolver in each hand. Hernandez subsequently shot that prison guard twice, as well as two other prison guards, all of whom were unarmed, as they attempted to flee the area of the prison controlled by appellant.

We agree with the district court's summation:

> ... the jury heard that Petitioner had murdered three people, including Antonia Venegas, the prostitute who was stabbed forty-four times, and that he had seriously wounded at least three others. The jury also saw Petitioner's record of conviction in three other felony cases and heard testimony that Petitioner was a member of the infamous Texas Syndicate. The mitigating evidence reasonably available to Petitioner's [sic] could not have offset the strength of these aggravating circumstances. ... Indeed, some of the mitigating evidence, such as the history of drug and alcohol abuse, could have "cut both ways."

D. Ct. Op. at 62-63 (citations omitted). Ultimately, Hernandez's own actions demonstrated that imprisonment would not keep him from killing again. Hernandez has not shown a reasonable probability that he would not have been sentenced to death if counsel had tried the punishment phase differently.

Further, Hernandez is not entitled to additional discovery or hearings on this issue. The district court's hearing provided a fair opportunity to present his claim of ineffective assistance at the punishment phase, and appellant has not demonstrated what type of information would be obtained in further discovery that would alter the court's conclusions.

### b.    Guilt/Innocence phase

Hernandez contends that the federal district court erred in failing to provide funds for the hiring of experts and failing to allow discovery to pursue his claim that Borchers and Hunter

16

provided ineffective assistance at the guilt/innocence phase by not presenting appellant's accident theory to the jury.

At the first trial, there was testimony that blood and bullet marks were found on the ceiling above where Officer Herrera's body was found. The medical examiner testified that the fatal bullet was fired at a slightly upward trajectory. The state's expert also testified that the cocking mechanisms on both weapons were destroyed during testing by the state. Appellant contends these facts suggest a defense that the shooting was accidental. Thus, appellant argues that his trial counsel was ineffective in not presenting this evidence at the second trial or at least pursuing further investigation of this theory. We disagree.

The district court found that appellant did not tell defense counsel that the shooting was accidental. Instead, Hernandez told Hunter that "he shot Herrera after Herrera grabbed for Petitioner's gun," and reaffirmed that story to Hunter during her subsequent representation of Hernandez in the trial for wounding the other three guards. The accident theory is, charitably, implausible in light of the facts that Hernandez shot Officer Herrera three times and then deliberately shot three other unarmed guards. Borchers did emphasize on cross-examination of the state's investigator that appellant only shot Officer Herrera after Officer Herrera grabbed for appellant's arm. The district court found that this was the most that Borchers could do with these facts.

Plainly, it was reasonable for Borchers and Hunter not to have considered the accident theory as a defense. And in any event, appellant cannot show a reasonable likelihood that he would not have been convicted and sentenced to death had his counsel pursued the theory that Hernandez accidentally shot Officer Herrera three times. The district court did not abuse its discretion in failing to order discovery, provide funds for expert investigation or conduct an evidentiary hearing on this issue.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court, deny appellant's requested relief and **VACATE** the stay of execution.