# United States Court of Appeals
## For the First Circuit

Nos. 13-1450
     15-1254

UNITED STATES OF AMERICA,

Appellee,

v.

OSCAR J. MARTÍNEZ-HERNÁNDEZ, a/k/a Cali,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Selya, and Lipez,
Circuit Judges.

Rafael F. Castro Lang for appellant.
Juan Carlos Reyes-Ramos, Assistant United States Attorney,
with whom Nelson Pérez-Sosa, Assistant United States Attorney,
Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United
States Attorney, were on brief, for appellee.

April 1, 2016

**LYNCH**, **Circuit Judge**. These consolidated appeals from Oscar Martínez-Hernández's guilty plea entered on August 7, 2012, divide into several parts, not all of which are within our jurisdiction.

One set of issues concerning Martínez-Hernández's former counsel's purported conflict of interest was presented to the district court before sentencing. The district court's denial of Martínez-Hernández's claim was timely appealed in appeal number 13-1450. The argument is that Martínez-Hernández's earlier retained defense counsel Sonia I. Torres Pabón ("Torres"), formerly employed by the United States Attorney's Office ("USAO") in Puerto Rico, had a disqualifying conflict of interest based on her involvement with one of the indictments that was dismissed as part of Martínez-Hernández's plea bargain. We affirm the district court's rejection of this claim. The district court properly concluded that there was no conflict and that the defendant was not prejudiced by his former counsel's representation.

The second appeal, however, concerns arguments first made to the district court after Martínez-Hernández's sentence was imposed on March 5, 2013, and judgment was entered on March 11, 2013. Appellate counsel characterizes these new claims as "supplement[ing] and elaborat[ing] [on] the issues that had already been raised by [the defendant]'s previous counsel prior to and after sentencing." He argues that these new post-judgment

- 2 -

arguments involving other facts and claims were within the jurisdiction of the district court but denies they were brought under 28 U.S.C. § 2255. We hold counsel to his word and treat the arguments as not having been made to the district court under § 2255, as no such petition was ever filed. At least some of these claims, those which come as part of appeal number 15-1254, were not properly before the district court, and so the district court had no jurisdiction to hear them. Accordingly, we dismiss the defendant's appeal that stems from the rejection of this belated second set of claims.

We leave the defendant to whatever post-conviction remedies he may have, without further discussion.

I.

Martínez-Hernández pleaded guilty to conspiracy to possess with intent to distribute controlled substances within 1,000 feet of property comprising a school, public housing project, and/or playground, in violation of 21 U.S.C. §§ 841, 846, and 860, and was sentenced to 300 months of imprisonment.

Martínez-Hernández has a long history of serious criminal activity, including convictions for unlawful possession of firearms and possession with intent to distribute controlled substances. In 1999, Martínez-Hernández was convicted of two counts of first-degree murder in Puerto Rico, after which he went into hiding. He was sentenced in absentia by a Puerto Rico court

to two consecutive life terms of imprisonment.   Around the year 2000, Martínez-Hernández fled to South America and eventually established residence in Venezuela.   Between 1999 and 2001, three indictments related to drug-trafficking conspiracies were issued for Martínez-Hernández in federal criminal cases 99-351, 99-352, and 01-379, in the District of Puerto Rico.

On June 27, 2011, Martínez-Hernández was charged, in a federal indictment in Puerto Rico (criminal case 11-241), with conspiracy to possess with intent to distribute controlled substances, possession with intent to distribute heroin, possession with intent to distribute cocaine, and possession with intent to distribute marijuana.   The indictment included 114 defendants.   A superseding indictment was issued on September 19, 2011.

In December 2011, Martínez-Hernández was arrested by Venezuelan authorities, and in January 2012, he was sent to Puerto Rico.

Martínez-Hernández was initially represented in all four indictments by Ricardo Izurieta.   However, he then retained attorney Esther Castro Schmidt ("Castro"), who filed a notice of appearance in criminal cases 99-351, 99-352, 01-379, and 11-241 on March 20, 2012.   It is noteworthy that while Castro had previously served as an Assistant United States Attorney ("AUSA"), Martínez-

- 4 -

Hernández does not argue that Castro's former employment with the USAO itself posed a conflict.

Martínez-Hernández also retained Torres, who filed a notice of appearance in these cases on May 2, 2012. Martínez-Hernández hired Torres based on Castro's recommendation that he "should hire Atty. Sonia Torres because she had good relations with the U.S. Attorney's Office and we could get a better agreement with her." Torres had been an AUSA from 1995 through 2006 and had served as Chief of the Criminal Division from about July 2002 through September 2006. Before assuming representation, Torres said that she took two steps to assure that she could represent Martínez-Hernández. First, she reviewed the dockets of Martínez-Hernández's federal cases. She found that there were two informative motions in criminal case 01-379 under her name: (1) a February 3, 2005, motion informing the court that a different AUSA had withdrawn from the case; and (2) a February 6, 2007, motion to withdraw herself from the case. Torres said that she told Martínez-Hernández about these motions prior to accepting his request for legal representation. Second, Torres asked First AUSA Maria Dominguez to review Martínez-Hernández's files; Dominguez confirmed that Torres did not have any involvement in Martínez-Hernández's prosecutions. Torres said that she informed Martínez-Hernández of this as well.

It is evident that Martínez-Hernández hired Torres precisely because her prior affiliation with the USAO might benefit him in plea negotiations. That expectation seemed to be correct in light of the deal reached.

On August 7, 2012, Martínez-Hernández pleaded guilty in case 11-241 to conspiracy with intent to distribute controlled substances within 1,000 feet of property comprising a school, public housing project, and/or playground. The offense carried a mandatory minimum of ten years of imprisonment and a maximum of life imprisonment. Under the plea agreement,[1] the parties agreed that Martínez-Hernández could request 264 months of imprisonment, and the government could request 324 months of imprisonment; the government agreed to dismiss with prejudice three other federal criminal cases against Martínez-Hernández (99-351, 99-352, and 01-379);[2] Martínez-Hernández could request that the sentence run concurrently with the sentences imposed for the Puerto Rico first-degree murder convictions; and Martínez-Hernández could request that his sentence run concurrently with any time he might be

---

[1] The parties agree that the waiver-of-appeal clause in the agreement should not be enforced.

[2] Recall that criminal case 01-379 was the case in which Torres had filed a motion explaining the withdrawal of a different AUSA and that Torres had filed a motion to withdraw from the case in 2007, five years before, facts which she said she disclosed to Martínez-Hernández prior to accepting his request for representation.

sentenced to in a federal revocation proceeding. The plea was made pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, so if the court did not accept the sentence recommendation, either Martínez-Hernández or the government could withdraw the plea.

After the plea was entered but before sentencing, on August 16, 2012, attorney Luis Rafael Rivera entered a notice of appearance on behalf of Martínez-Hernández. Torres and Castro filed motions to withdraw as Martínez-Hernández's attorneys the next day.[3]

When Rivera entered the case, only sentencing remained. Sentencing was scheduled for December 13, 2012. On December 11, 2012, Rivera filed an emergency motion to continue sentencing for thirty days so that he could investigate the presentence report further. The motion was granted, and sentencing was continued sine die.

Martínez-Hernández's sentencing hearing eventually was set for March 5, 2013, some seven months after entry of the plea. There was no interim motion to withdraw the guilty plea. On the day of sentencing, Rivera filed an "Emergency Motion for Continuance of Sentencing Hearing" seeking an additional

---

[3]    The motions stated that they had reached an agreement with Martínez-Hernández to withdraw from representing him, and Torres's motion said that Martínez-Hernández would not be prejudiced by her withdrawal.

continuance of thirty to forty-five days "to allow for effective preparation for trial in light of the recent discovery of an actual conflict of interest . . . which affected this Defendant's plea bargaining process and deprived the Defendant of his due process under the Fifth Amendment and Sixth Amendment right to conflict free representation."  This was the first mention by Martínez-Hernández of any concerns about prior counsel Torres.[4]  The district court, having previously allowed a three-month continuance in sentencing, denied the motion without holding a hearing on it and went forward with the sentencing hearing.

The court opened the sentencing hearing by dealing with the contention that Torres's informative motions in case 01-379 somehow created a conflict of interest for Torres in representing Martínez-Hernández.  More than ten pages of the sentencing transcript were spent on argument covering the issue.  The court held that there was no conflict because Torres had not participated in case 01-379 other than through one informative motion regarding the withdrawal of an AUSA and her own withdrawal of appearance. It added that during that time period, Torres handled cases in

---

[4]    Torres said that she had prepared an electronic communication to Rivera on November 26, 2012, confirming a conversation they had about any conflicts and "detailing the steps taken to ensure that there was no conflict of interest and that the matter was discussed with Mr. Martinez."  Torres said that she "went as far as providing Counsel Rivera with her notes of the meetings with Mr. Martinez, which reflected that the conflict inquiry was discussed with him."

Ponce, not San Juan, and that in any event, case 01-379 had been dismissed. Rivera admitted that Martínez-Hernández was well aware that Torres had been in the USAO. He said that he was trying to dispose of the issue now and not in a later § 2255 proceeding. He presented no other arguments of conflict apart from Torres's role in various cases as Chief of the Criminal Division and her involvement in case 01-379, which had been dismissed as part of the plea deal. As part of these arguments, Rivera claimed that Torres "was supposed to carry out [Martínez-Hernández's] extradition." The government said that Martínez-Hernández was just making a naked attempt to postpone sentencing again.

As to the outcome, the district court sentenced Martínez-Hernández to 300 months of imprisonment to be served concurrently with his first-degree murder convictions and concurrently with his revocation sentence. An amended final judgment was entered on March 11, 2013. At sentencing, the district court noted that Martínez-Hernández's "plea agreement [was] very mild" given his role in the drug-trafficking organization, and that because of his criminal history, Martínez-Hernández would be considered a career offender. The court also explained that Martínez-Hernández had prior convictions, including two first-degree murder convictions for which he had been sentenced to two consecutive life sentences, that he had been a fugitive for

- 9 -

twelve years, and that while living as a fugitive, he continued to ship drugs into Puerto Rico.

Concurrency of the federal sentence with the Puerto Rico life sentences for the murder convictions had been one of Martínez-Hernández's objectives in entering a plea agreement. He accomplished that. Martínez-Hernández's sentence was 36 months higher than what he had requested and 24 months lower than what the government wanted. Despite this, there was soon a barrage of untimely motions.

A.   "Motion to Dismiss or Withdraw Plea"

On March 19, 2013, Martínez-Hernández, through Rivera, filed a motion to dismiss or withdraw his guilty plea. Though the motion would have been timely if filed under Federal Rule of Criminal Procedure 35, the motion did not purport to be filed under Rule 35, nor did it meet the rule's other requirements. On appeal, Martínez-Hernández tries to recharacterize the motion and says it was a "Motion for Reconsideration" of the court's earlier ruling that no conflict of interest arose out of counsel's involvement with case 01-379. In the motion, Martínez-Hernández stated that Torres had not informed him or the court "of a potential conflict of interest stemming from her participation as a supervising U.S. Attorney in the prosecution of one of the Indictments filed against the defendant" and that "the prosecution failed to notify the Court and the Defendant that Counsel was the prosecuting attorney of

record in one of the cases bargained away as part of the plea agreement reached in this case."  The case with which Martínez-Hernández claims Torres was involved had been disposed of by the plea and dismissed on August 28, 2012, prior to sentencing. Martínez-Hernández filed a notice of appeal[5] on the same day he filed his motion to dismiss or withdraw his guilty plea.

The government opposed the motion on May 7, 2013, arguing on the merits that the February 2005 and February 2007 motions were the only instances in which Torres had appeared in relation to case 01-379.  The government said that "there is no evidence to suggest that Attorney Torres had any involvement with these cases while employed by the USAO, and therefore, there can be no conflict of interest implicit in her representation of the defendant."

In addition, on May 9, 2013, attorneys Castro and Torres filed informative motions explaining the history of their legal

---

[5]    This appeal was docketed as Court of Appeals docket number 13-1450.  Martínez-Hernández then asked this court to hold his appeal in abeyance while the district court ruled on his pending motion.  After we denied his motion to hold his appeal in abeyance, Martínez-Hernández filed a motion to reconsider, which we granted, holding the 13-1450 appeal in abeyance pending the district court's ruling on his post-judgment motion.
In a September 12, 2013, order, responding to the motion to reconsider, we wrote, "[c]onstruing appellant's post-judgment motion filed in the district court on March 19, 2013 as a timely motion for rehearing or reconsideration, it would appear that that motion rendered appellant's judgment of conviction non-final and, thus, suspended the running of the appeal period . . . ."  This order was making an assumption for purposes of holding an appeal in abeyance, not making a ruling on whether the March 19, 2013, motion was an appropriate motion for reconsideration.

representation of Martínez-Hernández, as described earlier. Unfortunately, the government did not argue that the so-called "Motion to Dismiss or Withdraw Plea" did not comply with Rule 35 or that a motion to withdraw a plea could be made after sentencing only through direct appeal or collateral attack. See Fed. R. Crim. P. 11(e).

On May 10, 2013, Rivera filed a motion to withdraw his appearance "because the defendant's family will be retaining a new counsel." Attorney Rafael F. Castro Lang filed a notice of appearance on June 7, 2013, and is counsel on this appeal.

B.    So-Called "Nunc Pro Tunc" Motion

On July 16, 2013, Martínez-Hernández, through new counsel Castro Lang, filed a "Nunc Pro Trunc [sic] Motion to Set Aside Judgment, Annul All Proceedings and Dismiss the Indictments." Castro Lang has expressly disavowed that it was brought under § 2255. In the motion, Martínez-Hernández argued that "[t]he present Motion to Dismiss substitutes [the March 19, 2013, motion to dismiss or withdraw his guilty plea] and should be made retroactive to the date of said filing."

In this motion, which cited no authority concerning the district court's jurisdiction to hear it, Martínez-Hernández claimed for the first time that when Torres was an AUSA, she was assigned to prosecute two criminal cases where "one of the

- 12 -

defendants . . . became a cooperating witness [for the prosecution]." Martínez-Hernández argued:

> [Torres's] recruitment and personal participation with [the] cooperating witness . . . is sufficient to establish that she was personally involved in the prosecution of Martinez-Hernandez in at least 3 indictments. When you add to this that she was the Chief of the Criminal Division while said cases were on-going she also was personally involved in her supervisory capacity.

This new information, Martínez-Hernández posited, showed that Torres had an actual conflict of interest when representing Martínez-Hernández.[6] In the memorandum of law, Martínez-Hernández claimed that "[a]side from [Torres's] patent actual conflict of interest . . . there exists the problem that her actions may have violated the lifetime no contact rule of 18 U.S.C. § 207(a)(1)."[7] He also argued that he had "a legitimate Motion to Dismiss the Indictments" in criminal cases 99-351, 99-352, and 01-379 "due to post trial delay in arresting him," but that Torres could not

---

[6]    Martínez-Hernández said that if the government opposed his motion, he requested, inter alia, the taking of depositions of all prosecutors involved with criminal cases 99-351, 99-352, and 01-379 and for the court to conduct in camera examination of all files related to Martínez-Hernández's extradition from Venezuela.

[7]    Section 207(a)(1) bars executive branch officers such as prosecutors "after the termination of [their] service or employment with the United States or the District of Columbia," from, inter alia, appearing before a federal court "on behalf of any other person . . . in connection with" certain matters. 18 U.S.C. § 207(a)(1).

pursue this issue because "Torres [was] the head of the criminal division from 2002-2006 which would have required her alleging negligence of her office in failing to extradite [Martínez-Hernández] from Venezuela to the U.S."  Inexplicably, the government did not argue that this motion could be pursued only as a § 2255 petition but rather opposed the motion on the merits on September 27, 2013, and Martínez-Hernández filed a reply on October 25, 2013.

The district court denied Martínez-Hernández's July 16, 2013, motion on the merits on May 6, 2014, concluding, inter alia, that Torres did not violate 18 U.S.C. § 207(a)(1), that there was no conflict of interest in her representation of Martínez-Hernández, and that Torres's representation was not ineffective.

On May 12, 2014, Martínez-Hernández filed a motion for reconsideration of the court's order denying his nunc pro tunc motion.  It does not appear from the docket either that the government responded to or that the court ruled on this motion. On May 20, 2014, Martínez-Hernández filed a second notice of appeal, appealing the May 6, 2014, Opinion and Order.  This appeal was docketed as Court of Appeals docket number 15-1254.  The two appeals were consolidated for purposes of briefing and oral argument on April 1, 2015.

II.

Martínez-Hernández's various arguments made on appeal were raised at different points before the district court. In his "Emergency Motion for Continuance of Sentencing Hearing," Martínez-Hernández contended that Torres was conflicted because of her role in case 01-379.[8]

At his sentencing hearing, Martínez-Hernández maintained that there was an actual conflict of interest based on Torres's involvement with the 2001 indictment, case 01-379, and he asked to continue sentencing to brief the issue. The district court denied the emergency motion and rejected Martínez-Hernández's arguments at sentencing. The district court explained that it was "going to proceed to the sentence, and . . . [i]f [it has] to overturn it later under 2255, it's going to be easy, so we'll do it." We have jurisdiction over the conflict of interest argument Martínez-

---

[8]    In the motion, Martínez-Hernández's counsel, Rivera, stated:

> The defense recently discovered . . . that . . . [Torres] . . . was oblivious to the professional norms of ethical behavior . . . and failed to notify the Defendant and the Court of the substantially undisputed fact that the defense attorney had been the lead prosecutor in one [of the] cases 01-379 (JAF) included in this . . . plea bargain. The Defense therefore needs additional time to determine whether Defendants [sic] representation was affected, even subliminally, by this actual conflict of interest[.]

Hernández made at sentencing and entertain it to the extent it is made on direct appeal. The claim fails on the merits.

"In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). When "a defendant . . . shows that a conflict of interest actually affected the adequacy of his representation," the defendant "need not demonstrate prejudice in order to obtain relief." Id. at 349–50. "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. at 350. "Where an ineffective assistance claim is premised on counsel's alleged conflict of interest, we review the ultimate issue de novo, but defer to the district court's subsidiary fact findings unless they are clearly erroneous." Reyes-Vejerano v. United States, 276 F.3d 94, 97 (1st Cir. 2002).

The district court correctly concluded that there was no conflict of interest based on the arguments made to it prior to and at sentencing. The extent of Torres's participation in the 2001 case was the filing of one administrative motion on February 3, 2005, her motion to withdraw from the case on February 6, 2007, and her role as Chief of the Criminal Division between 2002 and 2006. Further, the 2001 case was dismissed pursuant to Martínez-

Hernández's plea agreement. Martínez-Hernández presented no plausible explanation of how Torres's tangential involvement with this earlier case created a conflict with her defending Martínez-Hernández in his 2011 case. In fact, Martínez-Hernández knew all along that Torres had worked for the government, he hired her at least in part for that reason, and Torres said that she explained her involvement in case number 01-379 to him before agreeing to represent him.

Given these facts, we agree with the district court's conclusion that no conflict existed. Cf. Brownlee v. Haley, 306 F.3d 1043, 1063-64 (11th Cir. 2002) (concluding that even though appellant's counsel was a former district attorney whose name "was listed on the [case action] sheets [for appellant's earlier criminal proceedings] because [the counsel] was serving at the time as a deputy district attorney with supervisory responsibility for the attorneys who actually handled the prosecutions," appellant made no showing that his counsel "had inconsistent interests simply because he worked in the district attorney's office at a time when [appellant] was prosecuted years earlier"); Hernandez v. Johnson, 108 F.3d 554, 560 (5th Cir. 1997) ("[Appellant's counsel]'s service as district attorney ended nine years before appellant's trial; he personally searched the records of the prior felonies before representing [appellant] to determine whether he was involved in those prosecutions and concluded there

was no hindrance.  Under these circumstances, where [the counsel] was only tenuously and nominally connected to the prior cases against [appellant], it can hardly be said that he 'actively' represented conflicting interests." (citing Cuyler, 446 U.S. at 350)).

As a result, we do not engage with the parties' disagreement over what, if any, standard of prejudice should apply here.  There was no conflict of interest at all based on the claims made prior to and at sentencing.

### III.

After conviction and sentencing, Martínez-Hernández filed untimely motions and introduced new arguments.  We believe we have no jurisdiction over those new arguments pursued on appeal, and we decline to consider them, as there has been no ruling from the district court on a properly filed petition under § 2255.

A.    Untimely Motion to Withdraw Plea

After sentencing, in a "Motion to Dismiss or Withdraw Plea" filed on March 19, 2013, Martínez-Hernández "petition[ed] the Court to revisit its position that no actual conflict of interest [arose] in this case."  He attached a series of emails to or from Torres in support of his motion.

However, under Federal Rule of Criminal Procedure 11(e), "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside

only on direct appeal or collateral attack."  Fed. R. Crim. P. 11(e).  Martínez-Hernández does not claim that this motion was brought as part of a collateral attack.  And so, to the extent that this was a motion to withdraw his guilty plea, the district court did not have jurisdiction to entertain it.[9]

On appeal, Martínez-Hernández suggests that the March 19, 2013, motion titled "Motion to Dismiss or Withdraw Plea" was neither a motion to dismiss nor a motion to withdraw his guilty plea, but was instead a "Motion for Reconsideration."  However, Martínez-Hernández cannot submit an untimely motion to withdraw his guilty plea under this post hoc rationalization.  "Motions for reconsideration are not to be used as 'a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district

---

[9]     The March 19, 2013, motion is hardly a model of clarity. It is captioned "Motion to Dismiss or Withdraw Plea," and the first sentence seeks "to dismiss the indictment until a fair, impartial, and conflict free prosecution can be secured."  But apart from two passing references, one of which stated that "the prosecution failed to notify the Court and the Defendant" about Torres's purported conflict, the lion's share of the motion focuses on whether "defense counsel may have affected the Defendant's rights to due process under the Fifth Amendment and Sixth Amendment right to conflict-free representation."  Looking at the substance of the motion, we conclude that this was a motion to withdraw a guilty plea based on allegations of a Sixth Amendment violation.  See United States v. Ortiz, 741 F.3d 288, 291 (1st Cir. 2014) ("Ascertaining a motion's character depends upon its substance, not its appellation.").  In any event, to the extent Martínez-Hernández was seeking to dismiss the indictment for prosecutorial misconduct, this argument is not developed on appeal.

court prior to judgment.'" United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (alteration in original) (quoting Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006)).

## B. New Post-Sentencing Arguments

In the July 16, 2013, so-called nunc pro tunc motion, Martínez-Hernández raised three new sets of arguments: (1) he claimed that Torres's "actions may have violated the lifetime no contact rule of 18 U.S.C. [§] 207(a)(1)"; (2) he argued that Torres had worked with a cooperating witness in Martínez-Hernández's case when she was an AUSA, and that Torres's supposed conflict prevented her from pursuing "a legitimate Motion to Dismiss the Indictments"; and (3) he suggested that Torres and/or the government failed to follow DOJ procedures on conflict of interest cases by not requesting an opinion from an Ethics Official, and that the district court should dismiss the indictment based on prosecutorial misconduct. Other than captioning it "Nunc Pro Trunc [sic]," Martínez-Hernández did not ground this motion in any given procedure or established law. The district court rejected these arguments on the merits in its May 6, 2014, Opinion and Order.

First, to the extent Martínez-Hernández was arguing that a violation of 18 U.S.C. § 207(a)(1) illustrates Torres's alleged conflict of interest, and so is part of his motion to withdraw his guilty plea, the district court lacked jurisdiction to consider the argument. See Fed. R. Crim. P. 11(e). And to the extent

- 20 -

Martínez-Hernández was urging the district court to find that Torres violated the statute, his contention is off the mark. Section 207 is a criminal provision whose violation must be preceded by formal charges brought by the government. The record does not reflect that Torres was ever so charged.

Second, to the extent Martínez-Hernández was seeking to withdraw his guilty plea based on his new arguments about Torres's alleged conflict, at that point, he could not seek to do so before the district court except through collateral attack. See Fed. R. Crim. P. 11(e). Again, Martínez-Hernández makes no argument that his motions were raised pursuant to § 2255, so the district court lacked jurisdiction to hear them.

Third, and finally, to the extent Martínez-Hernández in his nunc pro tunc motion was seeking to dismiss his earlier indictments because of alleged prosecutorial misconduct, this argument is not developed on appeal and so is waived, United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), whether or not the district court could entertain the merits.

"Under 28 U.S.C. § 1291, we have jurisdiction over appeals from final decisions and orders of the district courts within this circuit." Royal Siam Corp. v. Chertoff, 484 F.3d 139, 142 (1st Cir. 2007). However, "it normally is incumbent upon an appellate court to satisfy itself both of its own subject-matter jurisdiction and of the subject-matter jurisdiction of the trial

court before proceeding further." Id. "And if the record discloses that the lower court was without jurisdiction this court will notice the defect . . . ." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (quoting United States v. Corrick, 298 U.S. 435, 440 (1936)).

It is true that the government did not question the district court's jurisdiction to rule on the nunc pro tunc motion and replied on the merits. But the government's failure to notice the issues of untimeliness and lack of authority did not vest the district court with authority to hear the motion. See United States v. Cotton, 535 U.S. 625, 630 (2002); Irving v. United States, 162 F.3d 154, 160–61 (1st Cir. 1998) (en banc).

IV.

For the reasons above, Martínez-Hernández's appeal of the district court's ruling on his original conflict of interest claim, appeal number 13-1450, is affirmed. Martínez-Hernández's appeal of the district court's rulings on his post-sentencing arguments, appeal number 15-1254, is dismissed. We do not reach the issue of what, if any, arguments may at this point be pursued under § 2255.