**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 01-40392
_____


UNITED STATES OF AMERICA,

                        Plaintiff - Appellee,

versus


RODOLFO RICARDO VILLARREAL,


                        Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Texas

March 6, 2003

Before HIGGINBOTHAM and DAVIS, Circuit Judges, and HUDSPETH*, District Judge.

HUDSPETH, District Judge:

Appellant Rodolfo Ricardo Villarreal ("Villarreal") and several others were charged in a multi-count indictment with various drug offenses.  Villarreal was named as a defendant in two counts of the indictment.  In the first count, he was charged with conspiracy to distribute and to possess with intent to distribute more than 1000 kilograms of marihuana in violation of 21 U.S.C. § 846.  In the third count, he was charged with the substantive

*District Judge of the Western District of Texas, sitting by designation.

offense of knowingly possessing more than 100 kilograms of marihuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Villarreal went to trial on his plea of not guilty. On January 12, 2001, the jury returned a verdict, finding Villarreal not guilty of conspiracy, but guilty of the substantive offense of possession of marihuana with intent to distribute it.

After the trial, but before sentencing, Villarreal's attorney, Fernando Sanchez, Jr., was allowed to withdraw as counsel. He was replaced by Adrienne Urrutia. On April 16, 2001, Ms. Urrutia filed a motion for new trial on behalf of Villarreal. Following an evidentiary hearing, the district court denied the motion for a new trial. On July 11, 2001, Villarreal was sentenced to serve 120 months' imprisonment in the custody of the Bureau of Prisons to be followed by eight years of supervised release.[1] This appeal followed.

Villarreal appeals his conviction on several grounds. First, he contends there was insufficient evidence to support his conviction and that the district court should have granted his motion for a judgment of acquittal. Second, he contends that his motion for a new trial based on newly discovered evidence should have been granted by the district court. Third, he contends that his trial counsel, Fernando Sanchez, Jr., rendered ineffective

---

[1]The weight of the marihuana and Villarreal's prior drug conviction combined to require a minimum mandatory sentence of 10 years' imprisonment and 8 years of supervised release. 21 U.S.C. § 841(b)(1)(B).

assistance. Finally, Villarreal contends that the cumulative effect of these alleged errors rendered his conviction fundamentally unfair. Finding no reversible error, we affirm Villarreal's conviction and sentence.

I. SUFFICIENCY OF THE EVIDENCE

Villarreal made a motion for a judgment of acquittal at the time the Government rested its case-in-chief. He did not renew his motion after he presented defense evidence nor at the close of all the evidence. However, he timely filed a post-verdict motion for a judgment of acquittal pursuant to Fed.R.Crim.P.29(c). Therefore, we review Villarreal's claim that the evidence was insufficient under the "rational jury", not the "manifest miscarriage of justice", standard. **See United States v. Thomas**, 12 F.3d 1350, 1373 (5th Cir. 1994); **United States v. Allison,** 616 F.2d 779, 783-84 (5th Cir. 1980). Under this standard of review, we decide whether, viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. **Jackson v. Virginia,** 443 U.S. 307, 319 (1979); **United States v. Peters,** 283 F.3d 300, 307 (5th Cir.), **cert. denied, Edmonson v. United States,** _____ U.S. _____, 122 S.Ct. 1949 (2002), and **cert. denied, Peters v. United States,** _____ U.S. _____, 122 S.Ct. 2612 (2002). All reasonable inferences must be drawn, and all credibility determinations made, in the light most

3

favorable to the verdict. **United States v. Hull,** 160 F.3d 265, 272 (5th Cir. 1998).

In arriving at its verdict in this case, the jury could have considered the following evidence: San Ygnacio, Texas is a small town located approximately 40 miles south of Laredo on U.S. Highway 83. Highway 83 parallels the Rio Grande River, which is the international boundary between the United States and Mexico. In December 1998, agents of the Laredo Multi-Agency Narcotics Task Force became aware that a house located at 107 Benavides in San Ygnacio was being used by drug dealers as a "stash house", i.e., a place in which drugs could be stored temporarily before shipment to other destinations. The rear of the house was located approximately 150 yards from the Rio Grande River, with nothing but a wooded area in between. In an effort to further their investigation, Task Force officers installed an infra-red surveillance camera in a location which permitted monitoring of activity taking place at the suspected stash house. The camera was monitored from Zapata, Texas, another small town approximately 15 miles southeast of San Ygnacio. On February 11, 1999, officers monitoring the surveillance camera observed suspicious activity in and around the stash house. For example, at 2:52 p.m. a red Chevrolet Tahoe arrived and parked in front of the house. The driver, later identified as Jose Soto-Gutierrez, got out of the Tahoe and went inside the house. Eight minutes later, Soto

4

returned and drove away.  At 4:13 p.m. a gray Mercury Marquis was observed arriving at the stash house.  An unknown person backed the Mercury around to the rear of the house.  Based on experience, the officers monitoring the surveillance camera inferred that the Mercury was being loaded with drugs.  At 4:37 p.m., Villarreal arrived at the stash house driving his tow-truck.  Soto-Gutierrez was riding in the tow-truck as a passenger.  Soto-Gutierrez got out of the tow-truck and walked around to the back of the house where the gray Mercury was located.  A few minutes later, Soto-Gutierrez was seen walking back toward the driveway entrance followed by the gray Mercury.  Villarreal, Soto-Gutierrez, and one or two unknown individuals loaded the gray Mercury on the tow-truck.  Villarreal and Soto-Gutierrez got back in the tow-truck, and at 4:42 p.m., Villarreal drove it away.  From the monitoring office in Zapata, vehicles were dispatched to intercept and stop the tow-truck.

Jorge Luna, a Laredo police officer, received a call requesting assistance.  Specifically, he was asked to stop a red tow-truck with two occupants carrying a gray vehicle which was suspected to contain illegal drugs.  Luna positioned himself at the intersection of Zacatecas and U.S. 83, on the south side of Laredo.  At approximately 5:50 p.m., he spotted the described tow-truck approaching from the south.  Officer Luna fell in behind the truck, followed it a short distance, and then effected a stop.

Villarreal stepped out of his truck, and Officer Luna

5

requested to see his driver's license. Villarreal then proceeded to volunteer that he was coming in to Laredo from San Ygnacio and that he was taking the gray Mercury to Perez Garage. He further volunteered that he had received a telephone call from an unknown person asking him to pick up the vehicle at Pepe's Convenience Store in San Ygnacio and to deliver it to the Perez Garage in Laredo. When Officer Luna asked Villarreal to identify his passenger (Soto-Gutierrez), Villarreal stated that Soto-Gutierrez was a friend of his whom he had happened to encounter at the same convenience store in San Ygnacio. According to Villarreal, Soto-Gutierrez had asked for a ride upon learning that Villarreal was headed toward Laredo. Villarreal further stated that he did not know the name, address, or telephone number of the owner of the gray vehicle, but that he had been told that someone at the garage would pay him on delivery. As to Villarreal's demeanor, Officer Luna described him as being "pretty calm", but also over-cooperative in that he was volunteering detailed information in response to a simple request to see his driver's license. Villarreal then gave verbal consent to a search of his tow-truck and its cargo. Upon opening the rear door of the gray Mercury, Luna immediately observed several large brown taped bundles on the floorboards between the front seat and the rear seat. The bundles were partially covered by a piece of carpet, but still visible. Concluding that the bundles were probably packages of marihuana,

6

Luna placed both Villarreal and Soto-Gutierrez under arrest. Soto-Gutierrez attempted to flee the scene, but was reapprehended a short time later. A thorough search of the gray Mercury revealed the presence of numerous bundles of marihuana in the trunk of the vehicle in addition to those seen by Officer Luna on the rear floorboards. The total gross weight of the marihuana was 289 kilograms, well in excess of the 100 kilograms alleged in the third count of the indictment.

To convict him of possessing marihuana with the intent to distribute, the Government was required to prove beyond a reasonable doubt that Villarreal (1) knowingly (2) possessed the marihuana (3) with the intent to distribute it. **United States v. Garcia-Flores,** 246 F.3d 451, 454 (5th Cir. 2001). As in most cases, the only element in dispute was Villarreal's knowledge that he was in possession of a controlled substance.

A jury may ordinarily infer a defendant's knowledge of the presence of drugs from his control over the vehicle in which they are found. **Garcia-Flores,** 246 F.3d at 454; **United States v. Moreno,** 185 F.3d 465, 471 (5th Cir. 1999); **United States v. Shabazz,** 993 F.2d 431, 441 (5th Cir. 1993). If the contraband is hidden, however, we require additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge. **United States v. Ortega-Reyna,** 148 F.3d 540, 544 (5th Cir. 1998); **United States v. Resio-Trejo,** 45 F.3d 907, 911 (5th Cir. 1995).

7

In this case, the marihuana was not "hidden" in the usual sense of being secreted in a hidden compartment. **See Garcia-Flores,** 246 F.3d at 454; **Moreno,** 185 F.3d at 471; **United States v. Pennington,** 20 F.3d 593, 598 (5th Cir. 1994). Instead, some of the tape-wrapped bundles of marihuana were lying on the rear floorboards of the gray Mercury, and were visible to anyone standing near the car and looking through the rear window. The jury could have inferred that Villarreal, the tow-truck driver, had looked inside the vehicle and seen the bundles. It is unclear, however, whether someone without specialized knowledge would have recognized and identified the bundles as probably containing contraband.[2] Therefore, we consider whether additional circumstantial evidence of knowledge is present.

One example of circumstantial evidence which may be probative of knowledge is the value of the drug being transported. **United States v. Gamez-Gonzalez,** _____ F.3d _____, 2003 WL 168650 at *3 (5th Cir. Jan. 27,2003); **Garcia-Flores,** 246 F.3d at 455; **United States v. Ramos-Garcia,** 184 F.3d 463, 466 (5th Cir. 1999). In this case, Villarreal was transporting more than 600 pounds of marihuana, which the evidence showed was conservatively valued at more than $300,000. The jury could reasonably have inferred that

_____

[2]Villarreal, who had previously sustained a state conviction for possession of marihuana, might have possessed such heightened knowledge. However, proof of his conviction was not admitted in evidence, and the jury was not aware of it.

8

Villarreal would not have been entrusted with that extremely valuable cargo if he was not part of the trafficking scheme. There was additional significant circumstantial evidence of knowledge. For example, Villarreal told Officer Luna that he had picked up the gray Mercury at Pepe's Convenience Store in San Ygnacio, although the videotape from the surveillance camera conclusively established that he had picked up the vehicle at the stash house at 107 Benavides. In a later interview, Villarreal admitted that he had picked up the vehicle at the stash house. Villarreal also made conflicting statements as to when, where and how he had gotten together with Soto, and apparently false statements regarding Soto's activities at the stash house. Villarreal stated that Soto had remained in the tow-truck, when the surveillance videotape showed Soto getting down from the tow-truck and walking around to the rear of the stash house. Further, the jury could have found that Villarreal's statements to Officer Luna about the arrangements for the transportation of the gray Mercury were implausible. Villarreal told Luna that he had driven to San Ygnacio to pick up the gray Mercury on the basis of an anonymous telephone call, and that he never obtained the name or telephone number of the owner. Both inconsistent statements and implausible explanations have been recognized as evidence of guilty knowledge. **Moreno,** 185 F.3d at 472; **Ortega-Reyna,** 148 F.3d at 544. Also, a defendant's exculpatory statements which are shown by other evidence to be

9

false may give rise to an inference of consciousness of guilt. **United States v. Pringle,** 576 F.2d 1114, 1120 (5th Cir. 1978).

Far from being devoid of evidence pointing to guilt, the record in this case is more than sufficient to support a verdict of guilt beyond a reasonable doubt. Villarreal's possession of the marihuana on February 11, 1999, is not disputed, and the large quantity is indicative of intent to distribute. **Moreno,** 185 F.3d at 471. Villarreal's inconsistent statements, false exculpatory statements, and implausible explanations as to how he came to be hauling a vehicle loaded with marihuana, when combined with all the other evidence in the case, are more than sufficient circumstantial evidence of guilty knowledge. The jury's verdict of guilty as to the third count of the indictment is supported by sufficient evidence.

II.  NEWLY DISCOVERED EVIDENCE

On April 16, 2001, more than three months after the trial ended, Villarreal filed a motion for a new trial based on newly discovered evidence. The "new evidence" asserted by Villarreal consists of the testimony of Carolina Blanquez; the testimony of Cresencio Perez, and evidence captured on videotape by the surveillance camera trained on the stash house. The district court denied the motion for new trial. Our standard for review of that decision is abuse of discretion. **United States v. Reedy,** 304 F.3d 358,371(5th Cir. 2002).

10

A motion for new trial based on newly discovered evidence may be filed any time within three years after the verdict or finding of guilt, and may be granted by the district court "if the interests of justice so require." Fed.R.Crim.P. 33. In order to prevail on such a motion, the defendant has the burden of showing that:

> (1) The evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal.

**Reedy,** 304 F.3d at 372. The defendant must establish all five prerequisites in order to prevail. **United States v. Bowler,** 252 F.3d 741,747 (5th Cir. 2001).

Applying these criteria to the instant case, we find that the district court did not abuse its discretion in denying Villarreal's motion for new trial based on newly discovered evidence. The district court held an evidentiary hearing, at which Carolina Blanquez and Cresencio (Chencho) Perez testified. A review of the record of that hearing reveals that the testimony of Carolina Blanquez could have served no evidentiary purpose other than to impeach the testimony of Officer Jorge Luna. The testimony of Cresencio Perez was of even less value to the defense. Although the purported destination of Villarreal was Perez' garage in Laredo, Perez testified that he did not recall ever being contacted

11

by anyone concerning receipt of the gray Mercury automobile and that he knew nothing concerning Villarreal's transportation of it. Perez' testimony, like that of Blanquez, would be unlikely to produce an acquittal.

According to Villarreal, the most significant "new" evidence was the videotape from the surveillance camera. As the district court pointed out, of course, the videotape was not new evidence; it was introduced in evidence at the trial. However, Villarreal's new counsel argued that a procedure utilized after the trial to slow down the videotape revealed details that would have bolstered Villarreal's defense by corroborating post-arrest statements which the Government contended were false. Specifically, Villarreal contends that the slowed down videotape showed he was telling the truth when he told arresting officers (1) that the gray Mercury Marquis was emitting a large quantity of black smoke as it was driven from the rear of the stash house to his tow-truck, and (2) that some of the occupants of the stash house left the scene in a blue pickup truck. The district court correctly found, however, that the videotape was not newly discovered; it was disclosed to the defense before the trial and was introduced in evidence at the trial. If the defense failed to appreciate the significance of the evidence, that failure constituted a lack of diligence. **See United States v. Jaramillo,** 42 F.3d 920, 925 (5th Cir. 1995). Further, the district court did not abuse its discretion in finding that the

12

proffered evidence was neither material nor likely to produce an acquittal. The district court found that the slowed down videotape did not clearly show the emission of black smoke from the gray Mercury, and that the blue pickup truck did not appear on the video until 6:00 p.m., more than an hour after Villarreal and his tow-truck had left the stash house. The denial of the motion for new trial based on newly discovered evidence was not error.

III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Villarreal argues that his trial attorney, Fernando Sanchez, Jr., rendered ineffective assistance because he labored under multiple conflicts of interest and his pretrial investigation and preparation failed to uncover significant exculpatory evidence. He presented his claim of ineffective assistance to the district court as part of his motion for a new trial, and he seeks to appeal from the district court's denial of that motion.  The Government contends that this Court has no jurisdiction to entertain that appeal.  The Government is correct.  This Court has held that claims of ineffective assistance of counsel do not constitute newly discovered evidence for purposes of Rule 33.  **United States v. Medina,** 118 F. 3d 371, 372 (5th Cir. 1997); **United States v. Ugalde,** 861 F.2d 802, 805-10 (5th Cir. 1988).  Any motion for a new trial based on any grounds other than newly discovered evidence must be filed within seven days after the jury verdict.  **Ugalde,** 861 F.2d at 805.  In this case, Villarreal's motion was filed more

13

than three months after verdict. Therefore, the district court had no jurisdiction to hear a claim of ineffective assistance of counsel in the form of a motion for new trial.

Even if the claim of ineffective assistance of counsel had been properly before the district court, the record indicates that the claim is without merit. A review of the record leads to the conclusion that Attorney Sanchez defended Villarreal vigorously and competently. First, he filed a motion to suppress evidence, which was denied after an evidentiary hearing. Second, he vigorously, and successfully, resisted the Government's efforts to introduce evidence concerning Villarreal's prior conviction for possession of marihuana. Third, he effectively cross-examined the witnesses presented in the Government's case-in-chief. Fourth, he called defense witnesses to give exculpatory testimony. Fifth, he delivered a vigorous summation, and interposed objections to the Government's closing argument. That his efforts did not go unrewarded is illustrated by the fact that the jury acquitted Villarreal on the more serious conspiracy count.

Notwithstanding this record, Villarreal's new counsel insists that Sanchez rendered ineffective assistance. In order to prevail on this claim, Villarreal has the burden of showing not only that his trial counsel's allegedly deficient performance fell below an objective standard of reasonableness, but also that but for trial counsel's errors there was a reasonable probability of a different

14

outcome.  **Strickland v. Washington,** 466 U.S. 668, 687-96 (1984).
In this connection, Villarreal argues again that Sanchez failed to offer important defense evidence in the form of the testimony of Carolina Blanquez and Cresencio Perez as well as evidence derived from the enhanced surveillance camera videotape.  As we noted in Section II, *infra*, this evidence was relatively insignificant, and the district court correctly found no reasonable probability that it would have affected the outcome of the trial.  Villarreal further contends, however, that Sanchez was laboring under multiple conflicts of interest.  He has the burden of showing that an actual conflict of interest adversely affected Sanchez' performance.  **Cuyler v. Sullivan,** 446 U.S. 335, 348 (1980).  The mere possibility of a conflict, absent a showing that the attorney actively represented conflicting interests, is not sufficient.  **Id.**  To prevail, a defendant must identify "some plausible defense strategy or tactic [that] might have been pursued but was not, because of the conflict of interest."  **Hernandez v. Johnson,** 108 F.3d 554, 560 (5th Cir. 1997)(quoting **Perillo v. Johnson,** 79 F.3d 441, 449 (5th Cir. 1996).  In this case, Villarreal weaves the following facts into his theory of conflict of interest: (1) Sanchez was an assistant district attorney in 1990 when that office prosecuted Villarreal for possession of marihuana in Zapata County; (2) several years later, after leaving the district attorney's office for private practice, Sanchez represented Raul Sanchez, Arnulfo

15

Lares, and Ovidio Navarro, all of whom had been witnesses in Villarreal's state court case, in connection with matters wholly unrelated to either the old or new charges against Villarreal; (3) Sanchez employed Raul Sanchez, who was also his cousin, to take photographs of the arrest scene and the stash house in preparation for Villarreal's defense, and (4) Sanchez was a friend of Cresencio Perez, and chose not to call him as a defense witness because of concern that Perez might be implicated in a drug trafficking case. The district court carefully reviewed these claims, and correctly found that neither individually nor collectively did they add up to an actual conflict of interest. The mere fact of Sanchez' employment in the district attorney's office at the time of Villarreal's prior conviction did not represent a conflict of interest, **see Hernandez,** 108 F.3d at 559-60, nor did his later representation of various participants in the old case in unrelated matters. With respect to Cresencio Perez, Villarreal proffered no evidence that Sanchez failed to call Perez as a witness because of their friendship. Finally, we note, as did the district court, that if a potential conflict of interest did exist, Sanchez made Villarreal aware of it before the trial. Having been so informed, Villarreal chose to continue being represented by Sanchez. Even if this issue were properly before the Court, we would find it lacking in merit.

IV.  CUMULATIVE EFFECT OF ERRORS

Villarreal's final contention is that the cumulative effect of multiple errors that occurred at his trial was so prejudicial that reversal of his conviction is required. There is case law to the effect that the cumulative effect of a series of errors may require reversal, even though a single one of those errors, standing alone, would not require such a result. **See e.g., United States v. Canales,** 744 F.2d 413, 430 (5th Cir. 1984). We have stressed, however, that a reversal based on the cumulative effect of several alleged errors is a rarity. **Reedy,** 304 F.3d at 373; **United States v. Lindell,** 881 F.2d 1313, 1327 (5th Cir. 1989). In any event, this proposition of law, however sound, has no application to the instant case. We have held that the district court did not err in finding the evidence sufficient to support a finding of Villarreal's guilt, and in denying Villarreal's motion for a new trial based on newly discovered evidence.

V. CONCLUSION

Villarreal has failed to show that the evidence was insufficient to support the jury's verdict that he was guilty of knowingly possessing more than 100 kilograms of marihuana with intent to distribute it. He has also failed to demonstrate error in the district court's denial of his motion for a new trial. For these reasons, the judgment of the district court is AFFIRMED.