United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 21, 2007**

Charles R. Fulbruge III
Clerk

IN THE

**UNITED STATES COURT OF APPEALS**

FOR THE

**FIFTH CIRCUIT**

_____

No. 05-51016

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SERGIO RAMIREZ,

Defendant-Appellant.

_____

On appeal from the United States District Court
for the Western District of Texas
No. 5:04-CR-388-1

_____

Before DAVIS and STEWART, Circuit Judges, and GODBEY, District Judge.[*]

PER CURIAM:[**]

Appellant Sergio Ramirez appeals his conviction for knowingly possessing with the

intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1)

---

[*]District Judge for the Northern District of Texas, sitting by designation.

[**]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

-1-

& 841(b)(1)(A). The jury found Ramirez not guilty of conspiracy and acquitted his co-defendant, Juan Manuel Quiroga, on both the possession and conspiracy counts. Ramirez contends the evidence of knowing was insufficient to support his conviction. Having considered the evidence produced below, we find it sufficient and affirm the judgment of the district court.

## I. BACKGROUND

On July 15, 2004, Ramirez and Quiroga were arrested after Texas Department of Public Safety Corporal Patrick Davis, with the assistance of a canine unit, uncovered 127.35 kilograms of 72% pure cocaine worth $3.2 million stashed in a concealed compartment of a trailer being pulled by Ramirez's truck tractor. Davis initially stopped the truck for speeding on Interstate 10. As Davis approached the truck, he immediately noticed that the cargo on the flatbed trailer – another flatbed trailer – was improperly secured with a one-inch nylon strap, instead of the required four-inch strap. Failure to secure the cargo properly was a violation that required taking the truck out of service.

When Davis reached the cab, he asked Ramirez and Quiroga for their driver's licenses, logbook, and bill of lading. Both men produced identification, but were unable to produce the customary logbook or bill of lading.[1] Both men confirmed they were driving

---

[1]At trial, the Government's trucking expert explained that a bill of lading is used in the trucking industry to identify the load by point of origin, shipper, consignee, and destination. He further explained that legitimate loads are always accompanied by shipping documents, even freelance loads. However, the defense argued that it is not unusual to move an empty trailer without a bill of lading, and therefore it was not unusual to be provided no bill of lading when hauling trailers.

from Laredo, Texas, to Atlanta, Georgia, but neither could identify the exact destination. Quiroga told Davis they were to call a woman named Olga when they arrived in Atlanta for directions to the delivery point.

Because of the violation, Davis asked Quiroga to drive the truck to the next exit for a more thorough inspection. In route to the exit, Davis called for back up and requested a canine unit to meet him. Upon arriving at the exit, Davis asked for consent to search the vehicle, which the men gave. When the canine unit arrived, the officers conducted a sniff search of the trailers and the dog alerted toward the end of the top trailer. The officers eventually found a trapdoor leading to a concealed compartment that ran the length of the entire trailer – about 15 feet. The officers recovered the cocaine from the compartment and arrested Ramirez and Quiroga.

Texas Department of Public Safety Sergeant James Pieprzica arrived on the scene and, after advising Ramirez and Quiroga of their *Miranda* rights, interviewed each man separately. Ramirez informed Pieprzica that he owned the tractor, but did not own the trailers. Ramirez related an unusual story regarding how Olga, purportedly a broker in Chicago, hired him sight unseen to deliver the trailers.

At trial, Ramirez testified in his own defense. He explained that he worked as a driver for CSX in Chicago under an exclusive contract. He testified about his contact with Olga, though his trial testimony was different from what he had told Sergeant Pieprzica. He said Olga initially told him the trip was to be from Joliet, Illinois, to Laredo and back to Chicago, hauling trailers in both directions. Then, before he left, Olga told him that the load from

Joliet to Laredo had been cancelled and that he was to bobtail[2] to Texas. Finally, after he and Quiroga started for Laredo, Olga called and changed the final destination of the load from Chicago to Atlanta, Georgia. It does not appear Ramirez questioned Olga regarding this change in plans. He was to call Olga when he arrived in Atlanta for an address for delivery of the load.

The Government called Eduardo Garcia, the director of safety and leasing with Southwestern Motor Transport, as an expert witness on the trucking industry. Garcia testified on a number of issues, including the exclusivity of driver contracts. Garcia further explained that it is very unusual for a driver to drive a lengthy distance without a load; freight moves in all directions so it would have made better economic sense for Ramirez to find a load to haul to Laredo. Significantly, Garcia testified that it would have been much cheaper, not to mention quicker, for Olga to find a driver in Laredo who would move the load to Atlanta.

Ramirez moved for judgment of acquittal at the close of the government's case, and renewed that motion at the close of evidence, which the district court denied. The jury found Ramirez guilty of knowingly possessing cocaine with intent to distribute, but acquitted him of conspiring with Quiroga, and acquitted Quiroga on both counts. Ramirez moved for a judgment notwithstanding the verdict, which the court denied. Ramirez now challenges the

---

[2]"Bobtailing" refers to driving without a load.

sufficiency of the evidence upon which he was convicted, specifically the element of knowing.

## II. STANDARD OF REVIEW

In this Circuit, "review for sufficiency of the evidence is narrow." *United States v. Moreno,* 185 F.3d 465, 471 (5th Cir. 1999). We review the evidence de novo, and "view the evidence and all inferences to be drawn from it in the light most favorable to the verdict." *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005). Additionally, "all credibility determinations are made in the light most favorable to the verdict." *Moreno*, 185 F.3d at 471. "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Id.* We must reverse the verdict when the evidence is essentially in balance, for then "a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Ortega-Reyna*, 148 F.3d 540, 543 (5th Cir. 1998) (quotations and citations omitted). "[W]e must affirm if a rational trier of fact could have found that the government proved the essential elements of the offense beyond a reasonable doubt." *Moreno*, 185 F.3d at 471.

## III. THE EVIDENCE PRESENTED AT TRIAL IS SUFFICIENT TO AFFIRM RAMIREZ'S CONVICTION

To obtain a conviction for possession with the intent to distribute cocaine, the government must prove beyond a reasonable doubt that Ramirez (1) knowingly (2) possessed cocaine (3) with the intent to distribute it. *United States v. Resio-Trejo*, 45 F.3d 907, 911

(5th Cir. 1995). "Possession may be actual or constructive, and the intent to distribute may be inferred from the quantity and value of the [cocaine] possessed." *Id.* On appeal, Ramirez challenges only the knowledge element, arguing that the evidence produced at trial was insufficient to sustain a verdict.

Knowledge "may be inferred from the exercise of control over the vehicle in which the illegal drugs are concealed." *Id.* When the contraband is hidden in secret compartments, however, "this Court has normally required additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." *Id.* (internal quotations and citations omitted). With the additional requirement, we acknowledge that in such instances there "is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990). Here, the arresting officer found the contraband hidden in a secret compartment in a trailer Ramirez was hired to haul, rather than the truck itself. Accordingly, we must determine whether the additional circumstantial evidence the government adduced was sufficient to support a guilty verdict. Among the many types of behavior recognized as circumstantial evidence of guilty knowledge are:

> (1) nervousness; (2) absence of nervousness, i.e., a cool and calm demeanor; (3) failure to make eye contact; (4) refusal or reluctance to answer questions; (5) lack of surprise when contraband is discovered; (6) inconsistent statements; (7) implausible explanations; (8) possession of large amounts of cash; and (9) obvious or remarkable alterations to the vehicle, especially when the defendant had been in possession of the vehicle for a substantial period of time.

*United States v. Ortega-Reyna*, 148 F.3d 540, 544 (5th Cir. 1998).

## A. The Value of the Contraband

In *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003), this Court held that the value of the drugs being transported is circumstantial evidence that may be probative of knowledge. The Court explained that a jury could reasonably infer that a defendant "would not have been entrusted with that extremely valuable cargo if he was not part of the trafficking scheme." *Id.* In *Villarreal*, the defendant was found with 600 pounds of marijuana valued at more than $300,000. Here, Ramirez was found in possession of significantly more valuable contraband – 127.35 kilograms of 72% pure cocaine valued at $3.2 million. Because "a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders" with so much at stake, *United States v. Martinez-Moncivais,* 14 F.3d 1030, 1035 (5th Cir. 1994) (quoting *United States v. Cruz-Valdez*, 773 F.2d 1541, 1547 (11th Cir.1985)), a reasonable jury could infer that Ramirez knew about the contents of the trailer and was not duped into unwittingly transporting the drugs.[3]

---

[3]The Court need not decide whether the value of the contraband here, standing alone, would be sufficient to support the verdict, as there is additional circumstantial evidence showing knowledge. *Cf. United States v. Rojas-Alvarez*, 451 F.3d 320, 335 (5th Cir. 2006) ("The Government's evidence in *Villarreal* . . . was not limited to the value of the contraband alone . . . . In its final analysis, the *Villarreal* court focused more on the defendant's inconsistent statements than the weight of the drugs in the car in concluding that circumstantial evidence supported his guilty verdict."). The value of the drugs in *Villarreal* was only $300,000, while the value of the drugs in *Rojas-Alvarez* was "valued at a fraction of the amount found in *Villarreal*." *Rojas-Alvarez*, 451 F.3d at 335.

### B. Ramirez Told Inconsistent Stories

This Court has previously stated that "[i]nconsistent statements are inherently suspicious" and that "a factfinder could reasonably conclude that they mask an underlying consciousness of guilt." *Diaz-Carreon*, 915 F.2d at 955. Here, the Government contends that Ramirez was not completely forthcoming with information when initially questioned, and highlights inconsistencies between Ramirez's interview with Pieprzica and Ramirez's testimony at trial. First, the Government suggests Ramirez's explanations of how he came in contact with Olga were inconsistent. When interviewed by Pieprzica, Ramirez explained that she was just "around." Yet, at trial, Ramirez explained that he obtained Olga's number from an advertisement for a job posted in CSX's driver's lounge. Additionally, Ramirez first told Pieprzica that an unknown woman arrived at his house with the front money from Olga. Ramirez told Pieprzica he did not know how the woman knew his address. At trial, however, Ramirez testified that the woman was Olga's sister and that he gave Olga his address. Finally, Ramirez first told Pieprzica that Olga gave him directions to the Laredo drop lot, only to change his story once confronted by Pieprzica with an envelope found in the truck containing a contact's name and directions to the lot. A reasonable juror could infer that Ramirez's inconsistent statements were an attempt to "mask an underlying consciousness of guilt." *Diaz-Carreon*, 915 F.2d at 955.

### C. Ramirez's Explanation Is Implausible

The Government further contends that Ramirez proffered an implausible explanation for his possession of the drugs, from which a jury could reasonably infer guilty knowledge. In addition to the value of the drugs found and inconsistent statements, this Court has stated that "a less-than-credible explanation is part of the overall circumstantial evidence from which possession and knowledge may be inferred." *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir.1988) (internal quotations and citations omitted). The Government first focuses on the circumstances surrounding Ramirez's hiring. At trial, Garcia, the Government's expert, testified that it was highly unlikely that Ramirez obtained Olga's number from an advertisement posted in CSX's driver's lounge, considering such an ad would, in effect, encourage drivers to violate their exclusive contracts. Garcia further explained that it would have been easier, cheaper, and faster for Olga to hire a driver from Texas to haul the trailers to Atlanta. This argument also intersects with the value of the drugs argument: if the mysterious Olga were willing to hire a stranger to deliver her $3.2 million of cocaine, why not just hire someone in Laredo, instead of hiring a stranger in Chicago to drive the load from Laredo to Atlanta? Instead, Olga hired Ramirez without asking for proof of a commercial driver's license, providing him with a bill of lading, or giving him pickup or delivery information until the last minute. Finally, it seems odd that having agreed to accept $4,000 for a Chicago to Laredo round-trip, Ramirez would acquiesce without complaint in the addition of an Atlanta leg to the trip for the same price. A jury could reasonably infer a consciousness of guilt from the improbability of Ramirez's story.

## IV. CONCLUSION

In the aggregate, the value of the cocaine, Ramirez's inconsistent statements, and Ramirez's implausible story collectively support a determination by the jury that Ramirez knew about the cocaine he was transporting, rather than being an innocent dupe. Finding sufficient evidence to support the jury's finding of knowing possession, we affirm the judgment of the district court.