# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 7, 2011

No. 09-41165

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARTHA SILVIA BARBA DE GARZA, also known as Martha Silvia Garza,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
(09-CR-1487)

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit Judges.

PER CURIAM:*

After a jury trial, Martha Silvia Barba de Garza ("Barba") was convicted of possessing methamphetamine with intent to distribute and importing methamphetamine into the United States from Mexico. On appeal, she

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

challenges only the district court's denial of her motion for a judgment of acquittal. Finding no error, we AFFIRM.

I

Barba, a legal permanent resident of the United States, was charged in a superceding indictment of three offenses: (1) knowingly and intentionally possessing more than 50 grams of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1); (2) conspiring to commit such an offense, in violation of 21 U.S.C. § 846; and (3) knowingly and intentionally importing a controlled substance into the United States from Mexico, in violation of 21 U.S.C. §§ 952(a) and 960. The Government presented the following evidence at trial.

Late in the evening on June 19, 2009, Barba and her twenty-five-year-old daughter drove to a port of entry in Laredo, Texas, where a U.S. Customs and Border Protection ("CBP") officer conducted a primary inspection of their vehicle. Barba told the officer that she and her daughter were driving back from Nuevo Laredo, Mexico, where they had gone for the day to visit family members. Barba also stated that she was the owner of the car, a Ford Freestyle, and that they had no items to declare. The officer, after inspecting their entry documents, began a customary inspection of the vehicle to check for illegal or undeclared goods. When he observed a small lump on the floor of Barba's car, he retrieved some tools to investigate the car's undercarriage. The officer noted that Barba's daughter became nervous when she saw that he was further scrutinizing the vehicle. Based on the nervous behavior of Barba's daughter and the unidentifiable lump on the car floor, the officer decided to refer the vehicle for a secondary inspection.

During the secondary inspection, another CBP officer inspected the vehicle's engine compartment and noticed that the car battery was unusually clean and large for the vehicle. When the officer inserted a probe into the

battery, the probe would not fully insert. The officer then ordered a canine inspection of the car; because no canines were available, she sent Barba's vehicle for an X-ray inspection instead.

An X-ray of the vehicle revealed the existence of an anomaly in the vehicle's battery. A CBP officer dismantled the battery and found inside several bundles of a white substance that was later proven to be methamphetamine. Only a fraction of the battery contained actual battery cells; the rest had been removed to make room for the bundles. In all, 3.97 kilograms of methamphetamine were found in the battery, an amount that commanded a retail value at the time of at least $176,000 in Laredo, Texas and $246,400 in San Antonio, Texas.[1]

An agent with U.S. Immigration and Customs Enforcement ("ICE") searched Barba's vehicle and found three tools inside her center console: a pair of "vice grips," a "Gerber" multi-functional tool, and a socket wrench with a 5/16 inch socket attached. He also found a package of battery terminal protectors and a pack of battery terminal grease, both unopened, in the vehicle's glove compartment, and a set of battery cables. After testing the socket wrench, the agent discovered that the 5/16 inch socket was an exact fit for the bolts on the battery cables. The agent found no other tools or tool accessories in the car.

Barba, who did not present any evidence, moved for a judgment of acquittal after the close of the Government's case. She argued that the Government's evidence did not prove beyond a reasonable doubt that she knew of the drugs in her car, and therefore she was entitled to a judgment of acquittal under Federal Rule of Criminal Procedure 29. Specifically, Barba argued that there was insufficient evidence to rule out the possibility that her daughter had hidden the drugs without Barba's knowledge. In support of her argument,

---

[1] An expert for the Government testified that the price of the drugs increased the further north they traveled due to the increased risk the drug smugglers incurred.

No. 09-41165

Barba noted that there was testimony that her daughter was seen driving the vehicle on two prior occasions.

The district court denied the motion.  The jury then returned a verdict acquitting Barba of the conspiracy count, but finding guilt on the substantive offenses of possession and importation of methamphetamine.  The district court sentenced Barba to two concurrent sentences of 235 months and five years of supervised release.

II

A

Where, as here, the defendant rests without introducing any evidence, her Rule 29 motion at the close of the Government's case suffices to preserve her challenge to the sufficiency of the evidence.  *United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007).  We therefore apply de novo review and decide "whether, viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt."  *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).[2] We must draw all reasonable inferences and make all credibility determinations in the light most favorable to the verdict.  *Villarreal*, 324 F.3d at 322.  Finally, we note that under the narrow scope of our review, "[w]e are concerned only with 'whether the jury made a rational decision, not with whether its verdict was correct on the issue of guilt or innocence.'" *Frye*, 489 F.3d at 207 (quoting *United States v. Alarcon*, 261 F.3d 416, 421 (5th Cir. 2001)).

---

[2] In contrast, a defendant generally waives the issue when he "moves for a judgment of acquittal after the government rests but fails to renew the motion after presenting his case." *United States v. Resio-Trejo*, 45 F.3d 907, 910 n.6 (5th Cir. 1995).  In such instances, our review of the defendant's sufficiency of the evidence claim is much narrower; it "is normally limited to whether there was a manifest miscarriage of justice."  *Id.*

4

No. 09-41165

B

To sustain a conviction for the offense of possessing a controlled substance with intent to distribute, the Government must prove beyond a reasonable doubt that the defendant knowingly possessed the controlled substance with intent to distribute it.  21 U.S.C. § 841(a)(1); *see also United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996).  Similarly, to prove the crime of importation of a controlled substance, the Government must show beyond a reasonable doubt that the defendant had knowledge that she was bringing the controlled substance into the United States.  21 U.S.C. §§ 952(a), 960(a)(1); *see also Lopez*, 74 F.3d at 577 (Government must establish that "defendant knowingly played a role in bringing the [controlled substance] into the country").

This common element of guilty knowledge "can rarely be established by direct evidence."  *United States v. Garza*, 990 F.2d 171, 174 (5th Cir. 1993).  Instead, proof of a defendant's knowledge "will usually depend on inference and circumstantial evidence.  No single piece of circumstantial evidence need be conclusive when considered in isolation; the question, rather, is whether the evidence, when considered as a whole, provides a substantial basis for the jury to find that the defendant's possession was knowing."  *United States v. Miller*, 146 F.3d 274, 280–81 (5th Cir. 1998) (citing *United States v. Richardson*, 848 F.2d 509, 514 (5th Cir.1988)).

Ordinarily, a jury may infer a defendant's knowledge of the presence of drugs from her "control over the vehicle in which they are found."  *Villarreal*, 324 F.3d at 324.  If the drugs are hidden, however, we "normally require[] additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge."  *Resio-Trejo*, 45 F.3d at 911 (internal quotation marks omitted).  One example of circumstantial evidence that "may be probative of knowledge is the value of the drug being transported."  *Villarreal*, 324 F.3d at 324.  Here, Barba was transporting more than 3.9 kilograms of methamphetamine, which

5

No. 09-41165

the evidence showed was conservatively valued at $176,000 in Laredo, Texas and $246,400 in San Antonio, Texas. As in *Villarreal*, the jury could have reasonably inferred that Barba "would not have been entrusted with that extremely valuable cargo if [s]he was not part of the trafficking scheme." *Id.*

In this case, another piece of probative evidence—indeed, one that must tip the scales in favor of affirmance—is the presence of the ameliorative tools and battery accessories in Barba's car, coupled with the battery's malfunction during the car's inspection. When viewed in the light most favorable to the verdict, Barba's awareness that her battery might fail or malfunction due to inadequate battery power is inferred from the presence of the three tools and the unopened battery accessories in her car. And when combined with Barba's ownership of the car—which is undisputed—and the high value of the hidden drugs, a jury could rationally infer beyond a reasonable doubt that Barba had knowledge of the hidden methamphetamine. Again, we do not sit in judgment of the correctness of the jury's verdict; we consider only whether the evidence as a whole "provides a substantial basis for the jury to find that [Barba's] possession was knowing." *Miller*, 146 F.3d at 280–81. Finding that the evidence provides such a basis, we must conclude that the Government presented sufficient evidence to prove Barba's guilt beyond a reasonable doubt.

III

Because the evidence was sufficient to convict Barba for importation of methamphetamine and possession of methamphetamine with intent to distribute, we AFFIRM her conviction.