# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 24, 2026

Lyle W. Cayce
Clerk

———————

No. 24-40692

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CARLOS CARDENAS-RAMIREZ,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CR-886-2

———————————————————————

Before ELROD, *Chief Judge*, and RICHMAN and WILLETT, *Circuit Judges*.

PER CURIAM:[*]

Carlos Cardenas-Ramirez was convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine but acquitted of possession with intent to distribute. He appeals the sufficiency of the evidence for his conviction and the district court's use of acquitted conduct at sentencing. We affirm.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-40692

# I

The Drug Enforcement Administration (DEA) conducted a long-term investigation of a drug trafficking and distribution cell led by Cesar Herrera. DEA agents surveilled Herrera as he drove to the parking lot of a Dollar General and exchanged items between his car and a white Nissan Sentra driven by Carlos Cardenas-Ramirez. Agents followed Cardenas-Ramirez as he drove to the parking lot of a second Dollar General where he swapped cars with another driver. Agents then followed the Sentra to a residence where they found two speaker boxes filled with cocaine.

Cardenas-Ramirez was arrested three years later. He was charged with (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) and (2) possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. Cardenas-Ramirez was tried before a jury.

At trial, the evidence showed the following: DEA agents observed an exchange of items between the car driven by Herrera and a white Nissan Sentra driven by Cardenas-Ramirez in the parking lot of a Dollar General. Herrera was parked, and the Sentra pulled up next to him. Herrera and Cardenas-Ramirez exited their vehicles. Herrera opened the back door on the driver's side of his car and the back door on the passenger side of the Sentra. While Herrera did so, Cardenas-Ramirez walked around the car toward the rear. Herrera twice reached into the back seat of his car, bent over to grab an item, and placed it into the back seat of the Sentra. While transferring the items, Herrera "[b]ent over as if to pick up something that had a . . . good amount of weight to it."

After the transfer, DEA agents followed Cardenas-Ramirez while he drove to the parking lot of a second Dollar General about two and a half miles

2

away. Cardenas-Ramirez stayed parked for a few minutes, then got out of the car, opened the back door on the driver's side, reached in, and "looked like he was messing with something." He closed the door on that side, went to the passenger rear door, "reached in, bent over, and looked like he adjusted something in the back door of that side." Cardenas-Ramirez then entered the Dollar General.

Once Cardenas-Ramirez returned to his car, someone drove an SUV into the parking lot and switched vehicles with him. Cardenas-Ramirez left in the SUV, and the driver of the SUV left in the Sentra. The Sentra was driven to a home and backed into the garage. After the Sentra left the home, agents obtained consent to search the residence. A K-9 unit performed a free-air sniff of the garage and alerted to two speaker boxes in the middle of the garage.

The speaker boxes were sealed, and agents could not see inside. The agents took the boxes to the DEA office, opened them, and found fourteen bundles of a substance later identified as cocaine by a DEA chemist. The cocaine had a net weight of 14.07 kilograms. Its value was estimated at over $300,000. Agents noted the cocaine added about 15-20 pounds to the weight of the speaker boxes, which are normally empty inside.

Meanwhile, officers were instructed to find probable cause to perform traffic stops on both the Sentra and the SUV. When he was stopped in the SUV, Cardenas-Ramirez provided the constable with a fake Mexican driver's license showing the name "Sergio Anaya." When the Sentra was stopped, the driver's phone was seized. An encrypted messaging app on the phone showed messages sent to a phone number matching the one attributed to Cardenas-Ramirez on the traffic citation he received when he was stopped.

After Cardenas-Ramirez was arrested, he consented to a search of his phone and apartment. No drugs, ledgers, or large amounts of cash were

found in his apartment.  Cardenas-Ramirez spoke to DEA agents and was recorded.  His interrogation was played for the jury.  Cardenas-Ramirez largely corroborated what the investigators observed.  He added that a female had asked him to pick up speakers, and that he was supposed to take the car to have it washed.  Cardenas-Ramirez told the agents that "those speakers were too heavy," "[s]o [he] didn't want to move anything" and refused to drive the car further, which is why the car swap took place—he "didn't even want to move . . . that [car]."

At the conclusion of the evidence, Cardenas-Ramirez moved for a judgment of acquittal.  The district court denied his motion.  Cardenas-Ramirez was acquitted on the possession count but convicted on the conspiracy count.  He was sentenced to the mandatory minimum of ten years.  He timely appealed, challenging the sufficiency of the evidence to support his conspiracy conviction and the district court's use of the acquitted conduct underlying the possession charge at sentencing.

## II

We first address Cardenas-Ramirez's challenge to the sufficiency of the evidence.  "When a criminal appellant has previously moved for a judgment of acquittal, we review challenges to the sufficiency of the evidence *de novo*."[1]  In so doing:

> [W]e determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt.  We recognize that the jury was free to choose among all reasonable constructions of the evidence, and we accept all credibility

---

[1] *United States v. Gonzalez*, 907 F.3d 869, 873 (5th Cir. 2018) (citing *United States v. Hale*, 685 F.3d 522, 543 (5th Cir. 2012)).

choices that tend to support the jury's verdict. We view the evidence, both direct and circumstantial, as well as all reasonable inferences from that evidence, in the light most favorable to the verdict. Moreover, we determine only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence. Further, the evidence need not exclude every reasonable hypothesis of innocence.[2]

"Because this review is 'highly deferential to the jury's verdict,' we 'will reverse only if no rational jury could have found [the] defendant[] guilty beyond a reasonable doubt.'"[3]

## A

Cardenas-Ramirez argues the district court erred in denying his motion for acquittal because the evidence adduced at trial was insufficient to prove conspiracy to possess with intent to distribute. To prove that offense, the government must show "(1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy."[4] Cardenas-Ramirez argues the evidence was insufficient as to each element.

We first consider whether the evidence was sufficient to show an agreement. "The 'agreement to engage in the conspiracy alleged' need not have been express; '[a] tacit, mutual agreement with common purpose, design, and understanding will suffice.' . . . Moreover, '[c]oncert of action

---

[2] *United States v. Garcia*, 86 F.3d 394, 398 (5th Cir. 1996) (quoting *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995)).

[3] *United States v. Bourrage*, 138 F.4th 327, 348 (5th Cir. 2025) (quoting *United States v. Mesquias*, 29 F.4th 276, 279 (5th Cir. 2022)).

[4] *Id.* at 347 (quoting *United States v. McClaren*, 13 F.4th 386, 406 (5th Cir. 2021)).

can indicate agreement and voluntary participation' in the conspiracy."[5] Here, Cardenas-Ramirez pulled up next to Herrera's vehicle and waited as Herrera transferred items into his vehicle, and Cardenas-Ramirez exchanged encrypted messages with the driver of the SUV with whom he swapped vehicles. This is concert of action sufficient to show an agreement.[6]

We next turn to whether the evidence was sufficient to show Cardenas-Ramirez had knowledge of the conspiracy and intended to join it. "A jury may ordinarily infer a defendant's knowledge of the presence of drugs from his control over the vehicle in which they are found."[7] However, citing *United States v. Gonzalez-Lira*,[8] Cardenas-Ramirez argues that because "the drugs in the case at hand were hidden in sealed, non-transparent speaker boxes, this Court requires additional circumstantial evidence to establish the defendant's knowing and voluntary involvement in the conspiracy." Indeed, "[i]f the contraband is hidden, . . . we require additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge."[9] Though this rule typically applies when drugs are stored in hidden compartments,[10] we have applied it in circumstances in which contraband

---

[5] *Id.* at 348 (alterations in original) (first quoting *United States v. Daniels*, 723 F.3d 562, 575 (5th Cir. 2013); and then quoting *United States v. Lopez*, 979 F.2d 1024, 1029 (5th Cir. 1992)).

[6] *Cf. United States v. Thomas*, 690 F.3d 358, 367 (5th Cir. 2012) (finding evidence sufficient to show conspiracy in part because defendant parked next to a vehicle and waited for drugs to be placed in it); *United States v. Segura*, 122 F. App'x 768, 775-76 (5th Cir. 2005) (unpublished) (finding evidence sufficient to show conspiracy in part because of communications between defendants coordinating the drug transfer).

[7] *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003).

[8] 936 F.2d 184, 192 (5th Cir. 1991).

[9] *Villarreal*, 324 F.3d at 324.

[10] *See id.* ("In this case, the marihuana was not 'hidden' in the usual sense of being secreted in a hidden compartment.").

was less concealed, namely when "some of the tape-wrapped bundles of [drugs] were lying on the rear floorboards" of the vehicle.[11]  We assume without deciding that the requirement of additional circumstantial evidence applies here.

Cardenas-Ramirez argues that "no evidence exists that [he] seemed nervous, or that he gave inconsistent statements or lied to the police, or that he gave implausible statements to the police."  This argument is belied by the record.  When Cardenas-Ramirez was stopped after the car swap, he provided law enforcement with a fake ID.  The jury could have reasonably inferred consciousness of guilt from this dishonest interaction with law enforcement.[12]

Additionally, the evidence showed that Cardenas-Ramirez transported cocaine with a value of more than $300,000.  We have previously held that transporting drugs with a value of "more than $300,000" is "circumstantial evidence which may be probative of knowledge," because the "jury could reasonably have inferred that [the defendant] would not have been entrusted with that extremely valuable cargo if he was not part of the trafficking scheme."[13]  Further, although the speaker boxes were opaque, Cardenas-Ramirez admitted that he suspected they contained contraband based on their weight.

---

[11] *Id.*

[12] *Cf. United States v. Aguilar-Alvarez*, 212 F. App'x 340, 342 (5th Cir. 2007) (unpublished) ("A defendant's decision to lie to law enforcement officers can constitute sufficient circumstantial evidence to support an inference of guilty knowledge." (citing *United States v. Jones*, 185 F.3d 459, 465 (5th Cir. 1999))).

[13] *Villareal*, 324 F.3d at 324; *see also United States v. Vazquez*, 370 F. App'x 459, 466 (unpublished) (holding that the jury could infer guilty knowledge based on the quantity of marijuana, valued between $15,000 and $39,000, which was "unlikely to have been entrusted to an unsuspecting driver").

Finally, we consider whether the evidence was sufficient to show Cardenas-Ramirez voluntarily participated in the conspiracy. Cardenas-Ramirez argues that "[h]is overt actions are . . . not sufficient to prove participation in a conspiracy" because he "called the person he was communicating with to tell him that he was not moving from [the second Dollar General] because he did not want any problems." Cardenas-Ramirez's argument relies on the jury accepting the narrative he advanced in his interrogation. However, the jury was free to disbelieve his statements.[14] Additionally, Cardenas-Ramirez's "participation in the car swap," instead of underscoring his innocence, "supports the jury's finding of guilt" because this "is a common drug trafficking method used to minimize the risk of detection and to shield the main location where the drugs are kept."[15]

## B

Cardenas-Ramirez next argues the district court erred in denying his motion for acquittal because the evidence adduced at trial was insufficient to prove he knew or reasonably should have known that the scope of the conspiracy involved at least five kilograms of cocaine.

> If an indictment alleges involvement in a conspiracy to distribute an amount of a controlled substance that triggers

---

[14] *See United States v. Gaspar-Felipe*, 4 F.4th 330, 341-42 (5th Cir. 2021) ("On sufficiency of the evidence review, however, '[w]e do not make credibility determinations.' Those are 'the sole province of the jury.' . . . The jury was free to credit [the defendant] or the witnesses against him; it chose the latter." (first alteration in original) (citation omitted) (first quoting *United States v. Garza*, 42 F.3d 251, 253 (5th Cir. 1994); and then quoting *United States v. Parker*, 505 F.3d 323, 331 (5th Cir. 2007))).

[15] *United States v. Garcia*, 86 F.3d 394, 399 (5th Cir. 1996); *cf. United States v. Duran*, 528 F. App'x 215, 220 (3d Cir. 2013) (unpublished) ("Furthermore, the fact that, while conducting the physical transfers, [the conspirators] did not merely transfer the cocaine . . . but rather swapped cars, 'reflects a level of mutual trust consistent with [a] conspiracy.'" (quoting *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008))).

No. 24-40692

enhanced penalties under §§ 841(b)(1)(A) or (B), then *Apprendi v. New Jersey*[16] requires the Government to prove beyond a reasonable doubt the quantity of the alleged drug as a fourth element of the offense.[17]

However, "the requisite fourth 'element' . . . is not a formal element of the conspiracy offense," so failure to prove the quantity alleged "does not invalidate defendants' conspiracy convictions; rather, it only affects the sentence."[18]

The evidence demonstrated that Cardenas-Ramirez was at the rear of his car at the first Dollar General while Herrera was at the back door transferring the speaker boxes between the cars while "[b]en[ding] over as if to pick up something that had a . . . good amount of weight to it." Agents testified that the narcotics added 15-20 pounds to the weight of the speaker boxes. At the second Dollar General, Cardenas-Ramirez manipulated the speaker boxes himself. He described them in his interrogation as "heavy" and admitted he suspected they contained contraband because of their weight. The jury saw photos of the speaker boxes. From this evidence, the jury could have rationally inferred that Cardenas-Ramirez knew or should have known that the speaker boxes contained at least five kilograms, or slightly over eleven pounds, of cocaine.[19]

_____

[16] 530 U.S. 466 (2000).

[17] *United States v. Daniels*, 723 F.3d 562, 570 (5th Cir. 2013).

[18] *Id.* at 573-74.

[19] *Cf. United States v. Gonzalez*, 907 F.3d 869, 875 (5th Cir. 2018) (holding that the jury could have determined the defendant should have reasonably foreseen involvement in a conspiracy involving five or more kilograms of cocaine in part because "the hidden compartment . . . used to transport the cocaine was designed to carry much more than five kilograms").

No. 24-40692

Cardenas-Ramirez argues that "[e]vidence that the speaker boxes were heavy or appeared to be heavy is speculative, unreliable, and lacked sufficient indicia of reliability to support the jury's verdict." However, "this court does not reweigh the jury's measurement of the evidence, and instead 'view[s] the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict.'"[20] We find that when viewed in the light most favorable to the verdict, the evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that Cardenas-Ramirez knew or reasonably should have known the scope of the conspiracy involved five kilograms or more of cocaine.

## III

Finally, Cardenas-Ramirez argues "[a]t sentencing, the district court violated Cardenas'[s] Due Process rights . . . when it considered count two's acquitted conduct." We acknowledge that several Supreme Court Justices have expressed concerns about the use of acquitted conduct in sentencing.[21] However, we remain bound by precedent, namely *United States v. Watts*,[22] which dictates that "a sentencing court may consider conduct of which a

---

[20] *Id.* at 876 (alteration in original) (quoting *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001)).

[21] *See, e.g.*, *McClinton v. United States*, 143 S. Ct. 2400, 2401 (Sotomayor, J., respecting the denial of certiorari) ("[T]he use of acquitted conduct to increase a defendant's Sentencing Guidelines range and sentence raises important questions that go to the fairness and perceived fairness of the criminal justice system." (footnote omitted)); *id.* at 2403 (Kavanaugh, J., respecting the denial of certiorari) ("The use of acquitted conduct to alter a defendant's Sentencing Guidelines range raises important questions.").

[22] 519 U.S. 148 (1997).

defendant has been acquitted."[23]  As recently as 2021, we have reaffirmed that *Watts* forecloses challenges like Cardenas-Ramirez's.[24]

At oral argument, counsel for Cardenas-Ramirez for the first time raised a recent amendment to the Sentencing Guidelines, U.S.S.G. § 1B1.3(c), which states, "[r]elevant conduct [for calculating a Guidelines range] does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction."[25]  The amendment went into effect in November 2024,[26] after Cardenas-Ramirez was sentenced.  It would accordingly need to apply retroactively in order to have effect here.  We note that several of our sister circuits have considered this issue and concluded that § 1B1.3(c) does not apply retroactively.[27]  We decline to decide the issue today because "we do not consider an issue first raised at oral argument on appeal."[28]  We note, however, that the conduct

—————————————

[23] *Id.* at 154.

[24] *United States v. Gaspar-Felipe*, 4 F.4th 330, 343 n.11 (5th Cir. 2021).

[25] U.S.S.G. § 1B1.3(c).

[26] *See United States v. Simpson*, 138 F.4th 438, 455 (6th Cir. 2025).

[27] *United States v. Henderson*, 136 F.4th 527, 535 n.2 (4th Cir. 2025) ("After [the defendant's] sentencing, the Guidelines were amended to exclude acquitted conduct from the definition of relevant conduct.  That amendment is not retroactive." (citation omitted)); *accord United States v. Coleman*, 138 F.4th 489, 512 (7th Cir. 2025) ("The [§ 1B1.3(c)] Guideline revision, however, does not have retroactive effect.  The Guidelines allow for retroactive application only for amendments specifically listed in U.S.S.G. § 1B1.10(d).  The amendment at issue here is not listed in subsection (d) and thus does not have retroactive effect."); *Simpson*, 138 F.4th at 455 ("Section 1B1.3(c), however, went into effect in November 2024, well after [the defendant] was sentenced.  And none of its provisions were made retroactive." (citation omitted)).

[28] *Arsement v. Spinnaker Expl. Co., LLC*, 400 F.3d 238, 247 (5th Cir. 2005).

No. 24-40692

for which Cardenas-Ramirez was charged in count two established, at least in part, conspiracy to possess with intent to distribute cocaine.

\* \* \*

For the foregoing reasons, we AFFIRM Cardenas-Ramirez's conviction and sentence.